## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

ILLINOIS CENTRAL RAILROAD COMPANY        **PLAINTIFF**

VS.        **CASE NO. 5:06-cv-160DCB-JMR**

WILLIE R. HARRIED a/k/a WILLIAM
ROY HARRIED, and WILLIAM S. GUY
and THOMAS W. BROCK        **DEFENDANTS**

and

ILLINOIS CENTRAL RAILROAD COMPANY        **PLAINTIFF**

VS.        **CASE NO. 5:07-cv-18DCB-JMR**

WARREN R. TURNER, ET AL.        **DEFENDANTS**

## REBUTTAL BRIEF IN SUPPORT OF MOTION OF
## DEFENDANTS GUY AND BROCK TO COMPEL DISCOVERY

### INTRODUCTION

This motion to compel addresses Illinois Central's refusal to permit discovery of information and documents involved in the railroad's decision to settle the *Harried* and *Turner* cases. The Motion to Compel Discovery filed by defendants Guy and Brock is not "moot." Illinois Central continues to refuse discovery of this information. As recently as November 19, 2008, former Illinois Central attorney Robert Andrekanic and paralegal K.K. Carter, deposed in Illinois, refused to respond to questions regarding Illinois Central's investigation which led to these settlements. For example, Mr. Andrekanic refused to answer

whether the railroad conducted its own search of court records. (*See* Deposition of Robert D. Andrekanic, 11/19/08, p.91, copy attached as Exhibit A.)

## DISCUSSION

Traditionally, a claim of attorney-client privilege is to be narrowly construed. The burden of proof is on the party claiming the privilege.[1] *See* 6 Moore's Federal Practice, 3rd ed., ¶ 26, 47[1][a], p.26-327. By contrast, the scope of discovery under the Federal Rules of Civil Procedure is broad. *Hickman v. Taylor*, 329 U.S. 495, 507, (1947).

Illinois Central has not met its burden of proof that certain documents and information upon which it relied in settling the Harried and Turner claims are privileged. It cannot overcome the well-established principle, grounded in fundamental rules of fairness, by which a party may not claim the attorney-client privilege as both sword and shield. This principle is well-established in state and federal courts across the country.

This case, at its heart, is a claim against the lawyers for defrauding Illinois Central into relying upon erroneous information as the basis for settling the claims of Harried and Turner. What the railroad relied upon in deciding to make these settlements is at the essence of this lawsuit. Mr. Guy and Mr. Brock have disclosed to the railroad their entire files on

---

[1] Questions of privilege are controlled by state law. Rule 501, Federal Rules of Civil Procedure.

Mr. Turner and Mr. Harried in the underlying *Eakins* case. These lawyers have not attempted to hide behind any screen of privilege as to these relevant documents.[2]

### Illinois Central has impliedly waived the attorney-client privilege as to the documents and information relied upon in making its settlements.

Under authority accepted by courts in Mississippi and across the country, Illinois Central's implied waiver of the attorney-client privilege prevents its unfair use as a shield against discovery.

Courts in Mississippi and in the Fifth Circuit have accepted the test set out in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), which states the majority rule for determining a question of implied waiver of attorney-client privilege. *See* discussion below. The rule stated in this seminal case is known as the "at issue" exception to attorney-client privilege, since it allows discovery of information placed at issue by a party which otherwise would be protected under the attorney-client privilege. In its brief, Illinois Central mischaracterizes the "at-issue" exception. Apparently mocking its status as a "leading case," Illinois Central suggests that *Hearn* is outdated authority which most courts now reject. In fact, *Hearn* has been cited some 113 times and has been followed by courts in Mississippi and in every federal circuit, including the Fifth Circuit.[3] The rule outlined in the *Hearn* case is alive and

---

[2] Illinois Central mischaracterizes Guy and Brock's withholding of documents based upon grounds of privilege. Guy and Brock have claimed <u>no</u> attorney-client privilege as to documents related to Turner and Harried in the *Eakins* case.

[3] *See* Shepard's citations for *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).

3

well, and has been repeatedly approved by courts as the most flexible and fair approach to this issue.

### Mississippi and Fifth Circuit law

The Mississippi Supreme Court, in *Jackson Medical Clinic for Women, P.A., et al. v. Moore, et al.*, 836 So. 2d 767 (2003), has explicitly acknowledged the "at-issue" or implied waiver exception to attorney-client privilege, stating that it is invoked "only <u>when the contents of the legal advice is integral to the outcome of the legal claims</u> of the action. <u>Such is the case when a party</u> specifically pleads reliance on an attorney's advice . . ., voluntarily testifies regarding portions of the attorney-client communication, or <u>specifically places at issue, in some other manner, the attorney-client relationship</u>." *Id.* at 773.

The court there held that fairness required that the privilege holder not be allowed to hide behind the shield of the privilege, when it was she who used the privilege as a sword. The plaintiff specifically pled reliance on attorney advice as a defense to a statute of limitations issue. The Mississippi Supreme Court, however, did <u>not</u> adopt a rigid rule requiring that an explicit claim of reliance on attorney advice is the only circumstance giving rise to the implied waiver. It explicitly employed a more flexible standard, covering a party who "specifically places at issue, in some other manner" the otherwise privileged information. The present case is just such a situation. Illinois Central's suit against Guy and Brock claims reliance upon allegedly fraudulent information supplied by them. If Guy and

4

Brock are denied an opportunity to test that reliance and its causation of Illinois Central's alleged damages, they are in effect denied a fair opportunity to defend themselves.

At least one court in Mississippi has explicitly accepted the *Hearn* test. In *In re Gordon, Gordon v. Friedman's, Inc.*, 209 B.R. 414 (Bankr. N.D. Miss. 1997), Judge Houston examined whether a debtor claiming intentional infliction of emotional distress against a creditor, could invoke the attorney-client privilege as to conversations with her bankruptcy attorney. The court quoted with approval the following passage from E. Epstein, *The Attorney-Client Privilege and The Work Product Doctrine*, (A.B.A., 3d Ed. 1997):

> We are told that we cannot have our cake and eat it too. What this means in the privilege context is that a litigant cannot at one and the same time place privileged matters into issue and also assert that those matters nonetheless remain privileged and are not subject to full disclosure and exploration. The point arises with frequency in insurance coverage litigation and legal malpractice suits.

> But merely instituting litigation does not necessarily mean one has put all attorney-client communications 'at issue.' There is a 'fairness' tension at work in determining precisely what has been placed at issue and what must be disclosed . . .'. *Id.* at 417-418.

The court applies the three *Hearn* factors outlined in Defendants' Memorandum Brief herein at p.6, which it acknowledges have been "widely followed:" (1) an affirmative act such as filing suit which results in assertion of the privilege; (2) putting the protected information at issue through this affirmative act; and (3) denying the opposing party access to vital information, if the privilege is applied. Because the plaintiff in *Gordon* claimed emotional distress damages from the creditor's threats to imprison her for debt, the creditor could

explore that alleged distress by examining whether her attorney told her the defendant could not legally follow through on those threats.

Similarly, it is difficult to conceive of a clearer case than the present one in which the entire scope of information, analysis, advice, and facts surrounding the Harried and Turner settlements are legitimate sources of discovery. Guy and Brock simply are unable to defend themselves against these serious allegations of fraud unless they can explore the totality of what caused the railroad to make these settlements. Was it the information supplied or omitted by Guy and Brock, or was it other tactical considerations? A full exploration of the information relied on in making those settlement decisions is vital to Guy and Brock's defense.

The *Hearn* rule has also been applied by the Fifth Circuit, which stated the following:

> The great weight of authority holds that the attorney-client privilege is waived when a litigant place[s] information protected by it in issue through some affirmative act . . . and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party. [citing *Hearn*]. *Conkling v. Turner*, 883 F.2d 431, 434 (1989) (emphasis added.)

The "at issue" exception to attorney-client privilege is alive and well around the United States, and there is ample, compelling precedent for allowing discovery of information such as that sought in this motion. *See* n.3 above.

### Other Authorities

The recent case of *Union County, Iowa v. Piper Jaffray and Co., Inc.*, 248 F.R.D. 217 (S.D. Iowa 2008), presents an excellent discussion of the *Hearn* rule, and compares it with

6

two other approaches sometimes used by courts to address this question. Emphasizing that determination of an implied waiver always starts as a question of fairness, the court examined facts closely apposite to the present case. Union County sued a financial adviser, claiming that its failure to disclose material information and risks associated with a proposed bond issue damaged the county when the project developers went bankrupt and defaulted on obligations to the county. In discovery, Union County refused to provide documents or information concerning certain professional advice it received in connection with the bond offerings, claiming attorney-client privilege. The District Court reviewed and affirmed a magistrate's order which held that Union County had effectively waived the attorney-client privilege by bringing the action, the entire basis of which was what it relied upon in deciding to issue the bonds.

Union County placed at issue its reliance on advice provided by defendants. The District Court determined that a full exploration of <u>all</u> professional advice received by the county was vital to the defense, to test whether there were intervening or superceding causes, such as legal advice from others, which may have influenced its decision. *Id.* at 220. Similarly here, Defendants Guy and Brock must in fairness be allowed to explore the totality of the information relied upon by Illinois Central in deciding to settle, to determine whether it was in fact information supplied or omitted by Guy and Brock which caused the railroad to settle the claims, or other factors.

7

The court in the *Union County* case characterized the *Hearn* approach as a majority

view, *id.* at 221, and also considered alternative approaches used by other courts. The court

rejected the approach urged by Illinois Central in this action, i.e. that of *Rhone-Poulenc*

*Rorer v. Home Indemnity Company*, 32 F.3d 851 (3d Cir. 1994).[4]

The *Rhone-Poulenc* approach recognizes an implied waiver only in cases in which the

party explicitly asserts a claim or defense which it attempts to prove by disclosing or

describing an attorney-client communication. *Id.* at 863. There is nothing in Mississippi law

to suggest such a restrictive approach.

The case of *GAB Business Services, Inc. v. Syndicate 627*, 809 F.2d 755 (11th Cir.

1987) (applying Florida law) is also instructive. There, an insurer sued its adjuster because

it settled a dubious claim for death of a racehorse, claiming the adjuster's actions caused it

to settle the case. The adjuster, GAB, complained that the trial court improperly allowed the

insurer to cloak its settlement negotiations within the attorney-client privilege. The court

noted the following:

> Deciding whether to try a case to judgment or to settle it involves elements of
> legal evaluation, of financial capacity to take risks, and of appetite for
> courtroom conflict which vary widely among litigants.

*Id.* at 760.

---

[4] The court in the *Union County* case acknowledged that there are actually three tests used
by various courts to determine implied waiver of attorney-client privilege. The least restrictive is
the "automatic waiver" rule which provides that a litigant automatically waives the privilege when
he asserts a claim that puts in issue a matter which would otherwise be privileged. The *Hearn*
approach, setting out the three factors noted in this discussion, is considered as the "intermediate"
test, and the *Rhone-Poulenc* test is considered the most restrictive. 248 F.R.D. at 220 n.3.

8

The adjuster argued that the insurer waived the attorney-client privilege when it injected into the case an issue requiring evidence of the reasonableness of its attorneys' conduct in settling the case. The insurer's motivation for settling was held to be a proper subject for discovery. *Id.* at 762. In the present case, the issue is precisely the same, i.e. whether information from Guy and Brock caused Illinois Central to settle, or whether there were other factors which caused that decision. It is only fair that this information be subject to discovery.

Respectfully submitted,

WILLIAM S. GUY and THOMAS W. BROCK
By and through their attorneys

s/John G. Corlew
JOHN G. CORLEW

OF COUNSEL:

John G. Corlew (MSB #6526)
Kathy K. Smith (MSB #10350)
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
Post Office Box 650
Jackson, MS  39205
Phone:  (601) 965-1900
Fax:  (601) 965-1901

9

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**Robert Michael Cunningham , II**
mikecunningham07@bellsouth.net,katiejacks01@bellsouth.net

**Wayne Dowdy**
waynedowdy@waynedowdy.com

**William S. Guy**
jguy@guylaw.com,jdaniel@guylaw.com

**Daniel J. Mulholland**
mulhollanddj@fpwk.com,marilynm@fpwk.com

**Prtichard Law Firm, In Receivership**
mikecunningham07@bellsouth.net

**Heather J. Wilkins**
wilkinshj@fpwk.com,yeatesev@fpwk.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:
None.

  s/John G. Corlew
JOHN G. CORLEW

10