**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**ILLINOIS CENTRAL RAILROAD COMPANY**                    **PLAINTIFF**

**VS.**                                 **CASE NO. 5:06-cv-160DCB-JMR**

**WILLIE R. HARRIED, et al.**                              **DEFENDANTS**

**AND**

**ILLINOIS CENTRAL RAILROAD COMPANY**                    **PLAINTIFF**

**v.**                                  **CASE NO. 5:07-cv-18 DCB-JMR**

**WARREN R. TURNER, JR., et al.**                           **DEFENDANTS**

---

**MEMORANDUM BRIEF OF DEFENDANTS,**
**WILLIAM S. GUY AND THOMAS W. BROCK,**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Defendants William S. Guy and Thomas W. Brock ("Guy and Brock") submit this Memorandum Brief in support of their Motion for Summary Judgment based on the statute of limitations, Miss. Code § 15-1-49.

## I. INTRODUCTION

Illinois Central Railroad Company's ("Illinois Central") fraud claim against Guy and Brock in the *Turner* and *Harried* cases is nothing more than a rehash of an argument Illinois Central has been making in various courts with no success since 2004. These lawsuits against Guy and Brock are time-barred and should be dismissed.

Guy and Brock have represented hundreds of claimants in Federal Employer Liability Act claims filed against Illinois Central for asbestos exposure during employment with the railroad. These cases go back as far as the late 1990s. Prior to 2008 Illinois Central had **never** tried one of these cases, but instead either settled or were voluntarily dismissed by Guy and Brock.

In 2000 Guy and Brock filed *Allen, et al. v. Illinois Central*, No. 2000-100, in the Circuit Court of Jefferson County, with 259 plaintiffs. In 2001 Guy and Brock filed *Eakins, et al. v. Illinois Central*, No. 2001-65, in the Circuit Court of Jefferson County, with 175 plaintiffs. The parties settled *Allen* in 2001 and *Eakins* in 2002 using a similar, if not identical, settlement procedure. Pursuant to this August 6, 2002, settlement agreement (Exhibit 1),[1] Illinois Central had the "right to reject or defer any case submitted for processing that [did] not meet the documentation requirements . . . pending further negotiations with [Guy and Brock]." A case was not considered settled until Illinois Central had the "information and documentation required by [it] for processing the case" and had approved the settlement of that case.[2]

So that Illinois Central could complete its due diligence on each claim, and pursuant to the settlement agreement, Guy and Brock provided an "Illinois Central Pulmonary Questionnaire"[3]

---

[1]     All exhibits are attached to the Motion for Summary Judgment.

[2]     In a pleading filed with the circuit court, Illinois Central described its motive for entering this settlement procedure: "In order to save time and expense, the parties heretofore pursued a less expensive settlement procedure and did not engage in formal discovery on any of the remaining Plaintiffs." (Exhibit 2, Motion for Court-Designation of Claim for Trial.)

[3]     This questionnaire was a form created by Illinois Central and supplied to Guy and Brock. In an appeal taken to the Mississippi Supreme Court on this same fraud issue alleged against Guy and Brock and their claimants, the Court noted that [d]uring pre-settlement discussions, the plaintiffs voiced concerns about the questionnaire, but ICRR told them to do the best they could filling out the forms, as 'this would be sufficient.'" *(Exhibit 3, Ill. Cent. R. R. Co. v. Acuff*, 950 So. 2d 947, 952 (Miss. 2006), *reh'g denied*, 2006 LEXIS 594 (Oct. 12, 2006),

completed by each claimant "to the best of their ability", and executed authorizations so that Illinois Central could obtain employment, railroad retirement board, social security, and medical records. (See Exhibit 1.) Illinois Central's lawyers and/or paralegals summarized the information collected and submitted it to Illinois Central for review and approval of each settlement. (Exhibit 4, Andrekanic depo. at 32, 33, 39, 40, 41, 42, 51, 57.) Illinois Central has refused in discovery to disclose who actually made the decision to settle particular cases. (*Id.*, Andrekanic depo. at 38.)

Over 400 claims were settled using this process. A former lawyer for Illinois Central testified that during this process he had a "good working relationship" with Brock and that they would communicate regarding missing information. This lawyer further stated that "I got the sense that [Guy and Brock] were genuinely attempting to give us as much information as they could, but that was a perception of mine, it may or may not be accurate . . . ." (*Id.*, Andrekanic depo. at 86.)

In 2003 and 2004, more than two years after the contingent settlements were agreed upon in *Allen* and *Eakins*, and with the litigation climate changing in Jefferson County and in Mississippi, Illinois Central stopped making payments on the small number of remaining claimants. Guy and Brock filed two separate motions with the circuit court to enforce the settlement agreements in June and August 2003.

By January 2004 Illinois Central was defending its non-payment of claims by stating it had no confidence in the settlement procedure because it had discovered that claimant Fred Tyler, contrary to his Interrogatory Responses and information provided in his Pulmonary Questionnaire, had been a plaintiff in a 1995 asbestos case, *David Cosey, et al. v. E. D. Bullard Co., et al*., in the Circuit Court of Jefferson County, which included approximately 3600 plaintiffs and dozens of

and *cert. denied*, 127 S. Ct. 1826 (2007)).

defendants.[4] Illinois Central learned of Tyler's participation in *Cosey* after obtaining medical records from his treating physician, Dr. Willie McArthur, using a medical authorization provided to Illinois Central by Guy and Brock. Upon being informed that Tyler had a prior asbestos diagnosis, Guy and Brock voluntarily dismissed him from the *Eakins* case.

Illinois Central, however, continued to suspend other settlement payments based on its alleged lack of confidence in the settlement procedure. In March 2004 Guy and Brock signed a handwritten agreement with Illinois Central pursuant to which Guy and Brock were to provide written assurances to Illinois Central regarding the procedures they had used to obtain accurate information on the questionnaires, and what future procedures would be used. In a voluntary effort to make sure there were no other "Fred Tyler" issues (i.e., where claimants had prior asbestos claims not disclosed to Illinois Central), Guy and Brock offered by letter to supply affidavits from the unpaid claimants identifying all prior asbestos litigation. (Exhibit 6, April 22, 2004 (incorrectly identified as 2002), corr. from Brock to Peters.)

Although the Guy/Brock letter said the affidavits would address prior asbestos claims (the only information of relevance to Illinois Central in its settlement of *Eakins* claims), the affidavits began with the language "I have never been a plaintiff or a claimant in any asbestos suit other than . . . ." Guy and Brock filed two cases[5] after *Eakins* for the sole purpose of including their clients in asbestos bankruptcy proceedings, and these two cases were not identified in the affidavits.

---

[4]    In a recent deposition of Tyler taken by Illinois Central, Tyler still could not identify *Cosey* as a case in which he had been a claimant, although he did know that he had been represented by Attorney Bob Pritchard, who filed the *Cosey* litigation in 1995. (Exhibit 5, Tyler depo at 16, 75.)

[5]    *McNeil, et al. v. Dresser Industries, Inc.*, No. 2002-283-CV9, and *Acuff, et al. v. American Optical Corporation*, 2003-159-CV8.

Illinois Central seized upon the affidavits as another opportunity to avoid making payments under the settlement, and continued to accuse Guy and Brock of intentionally misrepresenting information presented to Illinois Central for the purpose of obtaining settlement monies. Throughout 2004 Illinois Central filed numerous motions with the circuit court requesting wholesale dismissal of the settlement due to the alleged deceptions by Guy and Brock and their clients. The circuit court held four hearings (June, August, and October 2004; and January 2005) in which Illinois Central argued repeatedly that it had no confidence in the settlement procedures because of the false information it had discovered in documents submitted by Guy and Brock. Illinois Central openly accused not just the Guy and Brock claimants, but Guy and Brock themselves, of recklessly or knowingly giving Illinois Central false information (the very claim Illinois Central makes here).

The circuit court denied Illinois Central's motion to dismiss the settlement, and ordered it enforced. In the June 2004 hearing, the court observed:

> And by the way, we won't ever do another contingent settlement agreement. Either they're settled or they're not. This is stuff you all need to work out before you sign a settlement agreement.

(Exhibit 7, at 1317.)

> . . . I don't recall ever allowing my clients to sign a settlement agreement where the defendant had the option of paying or not paying, because I always know what – I mean, I just don't believe that my clients would have opted for that, because if I were a defendant, I can assure you which option I'd choose if I were a defendant. You know, if I had that option, I wouldn't pay.

(*Id.* at 1319.) After allowing further discovery on the alleged false information submitted by Guy and Brock, the circuit court in October 2004 continued to rule against Illinois Central. (Exhibit 8, at 1411.)

Illinois Central did not stop there. It continued to file pleadings asking for reconsideration and dismissal of the settlement based on alleged false information supplied by Guy and Brock. (*See, e.g.*, Exhibit 9, Nov. 18, 2004, Motion to Reconsider.) In a final hearing before the circuit court, Illinois Central argued:

> MR. BECKHAM: And I want to say **about eight months ago** we find for the first time a guy named Fred Tyler we find, in fact, the information supplied to us in the affidavit and pulmonary questionnaire was false **because we found his name in the *Cosey* case that I think was filed in this county**. That – bells go off in our head and then we begin our investigation, Your Honor, in this county and other counties. And that's why we didn't do it before we entered into the settlement procedure.
>
> THE COURT: So you begin your investigation after you had already settled your cases, right?
>
> MR. BECKHAM: **And after we find out that plaintiffs' counsel is providing us with information that is, in fact, not true, yes, sir.**

(Exhibit 10, January 2005 hearing transcript at 1592.) (Emphasis added.) The circuit court again denied relief.

Having no success with the circuit court, Illinois Central appealed to the Mississippi Supreme Court in two separate actions, one arising from *Eakins* (*Illinois Central v. Acuff*, No. 2005-CA-00388-SCT), and the other from *Allen* (*Illinois Central v. McDaniel*, No. 2005-CA-00389-SCT). In two published opinions[6], the Mississippi Supreme Court upheld the rulings of the circuit court and found:

> Even if we agreed with ICRR that plaintiffs cannot claim they intended only to provide information on prior asbestos litigation, this possibility does not lead *ipso facto* to the conclusion that the plaintiffs willfully submitted "manifestly false" affidavits. Clearly, plaintiffs' counsel did not consider the *Dresser* and *American*

---

[6]     *Acuff*, 950 So. 2d 947 (August 3, 2006) (Justice Dickinson); and *McDaniel*, 951 So. 2d 523 (August 31, 2006) (*en banc*, Justice Smith writing for Court), *cert. denied*, 127 S. Ct. 1332 (2007).

> *Optical* bankruptcy cases to be of concern to ICRR. The record provides no evidence
> that plaintiffs **or their counsel** were trying to conceal information from ICRR.

(Exhibit 3, *Acuff*, 950 So. 2d 947, 954.) (Emphasis added.)

Almost immediately after losing the appeals to the Mississippi Supreme Court, Illinois

Central instituted its fraud lawsuits against Willie Harried (filed November 22, 2006) and Warren

Turner (filed January 31, 2007). Illinois Central accused them of intentionally omitting the fact they

were in the *Cosey* case from Interrogatory Responses (Turner) and a Pulmonary Questionnaire

(Harried), the very same alleged fraud it began "investigating" in 2004 when it learned of Fred Tyler.

And, although Illinois Central had leveled the same charge of fraud against Guy and Brock in 2004,

it did not file complaints against them in these cases until January and February 2008.

The statute of limitations has run on Illinois Central's claims against Guy and Brock. Illinois

Central should not be allowed to circumvent the statute of limitations by switching to a different

court, four years after it began asserting fraud allegations against Guy and Brock. The facts here are

simple. Illinois Central was on notice of a possible cause of action against Guy and Brock in 2004,

and it pursued those claims in different courts until it got beat. This Court should not allow Illinois

Central to keep this litigation feud alive when it is clearly time-barred.

## II.  ARGUMENT

### Summary Judgment Standard

"The *Federal Rules of Civil Procedure, Rule 56(c)* authorizes summary judgment where 'the

pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits,

if any, show that there is no genuine dispute as to any material fact and that the moving party is

entitled to judgment as a matter of law.'" *Thomas, et al. v. Ford Motor Credit Corp., et al.*,

1997 LEXIS 23024, *4-5 (S.D. Miss. Jan. 10, 1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The defendant is not required to submit affidavits or evidence **negating** an essential element of the plaintiff's claim. See *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 364 (Miss. 1983). Instead, "the party against whom a motion for summary judgment has been made must respond with diligence. She remains silent at her peril. . . . [T]he non-movant may not rest upon allegations or denials in her pleadings. Mere allegation of a material fact in one's pleadings is not sufficient to generate an issue of fact sufficient to avoid summary judgment." *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 198 (Miss. 1988) (citing *Smith v. Sanders*, 485 So. 2d 1051, 1054 (Miss. 1986); and *Hill v. Consumer Nat'l Bank*, 482 So. 2d 1124, 1128 (Miss. 1986)). "The party opposing the motion must by affidavit or otherwise set forth specific facts showing that there are indeed genuine issues for trial." *Fruchter*, 522 So. 2d at 198 (citing *Matter of Lanius*, 507 So. 2d 27, 30 (Miss. 1987); and *Smith v. First Fed'l Savings & Loan Ass'n*, 460 So. 2d 786, 792 (Miss. 1984)).

### Illinois Central's Claims are Barred by the Statute of Limitations

Illinois Central alleges in the *Turner* and *Harried* First Amended Complaints that Guy and Brock are liable for fraud and for breach of the duty of good faith and fair dealing.[7] In *Turner*, Illinois Central bases its lawsuit on Turner's Answers to Interrogatories dated **January 25, 2002.**

---

[7] It is well-settled law in Mississippi and across the country that counsel for litigants owe no duties (except in very limited circumstances not present here) to adversary parties. See *James v. Chase Manhattan Bank*, 173 F. Supp. 2d 544, 550 (N.D. Miss. 2001) (Judge Pepper) (holding that "[t]his Court is unaware of any authority, however, not only in Mississippi, but anywhere in the country, which suggests that an attorney owes a duty, fiduciary or otherwise, to the adverse party in a case he is litigating. The Mississippi Supreme Court has expressly stated 'an attorney has no duty to an adverse party.' *Roussel v. Robbins*, 688 So. 2d 714, 725 n. 4 (Miss 1996). A contrary position would, for obvious reasons, be inimical to the American adversary system."). Contrary to Illinois Central's allegation, Guy and Brock owed no duty of good faith and fair dealing to Illinois Central, their adversary in hundreds of cases.

In *Harried*, Illinois Central bases its lawsuit on a Pulmonary Questionnaire dated **May 19, 2003.** Illinois Central alleges that Turner and Harried and their attorneys, Guy and Brock, knew the Interrogatories and Pulmonary Questionnaire contained false information, and intentionally supplied them to Illinois Central so that it would rely on the false information in evaluating settlement.

Both the *Turner* and *Harried* lawsuits are time-barred against Guy and Brock. See *Sanderson Farms, Inc. v. Ballard*, 917 So. 2d 783, 789 (Miss. 2005) (holding that claims of intentional misrepresentation are subject to Mississippi's general three-year statute of limitations). Illinois Central did not file its *Turner* lawsuit against Guy and Brock until **February 4, 2008**, **over six years after Turner gave Illinois Central his allegedly false Interrogatory Responses.** Illinois Central did not file its *Harried* lawsuit against Guy and Brock until **January 17, 2008, almost five years after Harried allegedly submitted a false Pulmonary Questionnaire to Illinois Central.[8]**

Illinois Central did not allege fraudulent concealment in the *Harried* case, but did in *Turner*. (*Turner* First Amended Complaint, ¶ 27). These Defendants specifically object to litigating the fraudulent concealment claim in the *Harried* case since it has not been pled; however, for purposes of this summary judgment motion, the Defendants will address the claim as if raised in both *Turner* and *Harried*.

---

[8]     Even assuming *arguendo* that the fraud did not accrue until the settlements were consummated, the cases are still time-barred. Turner signed his settlement Release **December 17, 2002,** and Harried signed his Release **November 25, 2003.** These cases against Guy and Brock were not filed until five and six years later. *See, e.g., Gray et al. v. Upchurch, et al.*, 2006 LEXIS 90184, *15-16 (S.D. Miss. Dec. 13, 2006) (Judge Starrett) (holding that alleged claim for fraudulent appraisals accrued on date closing was held).

**Fraudulent Concealment**

Illinois Central cannot avoid the fact that these cases are time-barred and cannot satisfy the requirements of a fraudulent concealment claim to toll the statute of limitations. In *Smith v. First Family Fin. Servs., Inc.*, 436 F. Supp. 2d 836, 841 (S. D. Miss. 2006), this Court (Judge Lee) stated that a plaintiff must show the following before it can use fraudulent concealment to avoid the statute of limitations:

> "both (1) an affirmative act to conceal the underlying tortious conduct, and (2) a failure to discover the factual basis for the claims despite the exercise of due diligence." *Boone*, 416 F.3d at 391 n. 11 (citing *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000)). Moreover, "[t]he affirmative act of concealment must have occurred after and apart from the discrete acts upon which the cause of action is premised." *Id.* (citing *Stephens v. Equitable Life Assur. Soc'y of the U.S.*, 850 So. 2d 78, 83-84 (Miss. 2003)).

Illinois Central's allegation in *Turner* of an affirmative act to conceal fraud is nothing more than a conclusory attempt to satisfy the pleading requirements of Fed. R. Civ. P. 9. Illinois Central first alleges that tendering the sworn Interrogatory Responses was an affirmative act to conceal the fraud. As noted above in *Smith*, the affirmative act cannot be the same act that is alleged to have been fraudulent.[9] Illinois Central then alleges that the Release signed by claimant Turner was an affirmative act designed to conceal the alleged fraud. Again, this is a weak effort to manufacture an affirmative act – a release signed by the claimant Turner does not in any way cover up, hide, or conceal any false information that may have been included in Interrogatory Responses. In addition,

---

[9]     Notably, Turner's Interrogatory Responses denied having completely accurate responses due to the passage of time. Turner repeatedly stated that he "provided the information sought to the best of his ability. The requested information covers a time span of many years which cannot be realized by memory with complete accuracy." In response to an inquiry of whether he had ever had a prior chest x-ray, Turner said, "Plaintiff has had chest x-rays but cannot remember with accurate specificity sufficient to respond to this interrogatory." (Exhibit 11.)

Turner was in a group of eleven claimants set for trial in October 2002. Illinois Central conducted discovery of these claimants **before** it entered the August 6, 2002, settlement agreement. Illinois Central noticed the depositions of the trial group, including Turner, for July 2002. (Exhibit 12.) Although these depositions went forward on the scheduled dates, Illinois Central never deposed Turner. Illinois Central had the opportunity, which it forewent, to ask Turner face-to-face if he ever been a plaintiff in any previous asbestos litigation. Illinois Central did, in fact, ask this question in the depositions it took of the trial plaintiffs. *See, e.g.*, deposition of Willie Carter: Q: Have you ever been involved in any other lawsuits against anybody? A: Nobody else. (Exhibit 13, Carter depo. at 103.); and deposition of Raymond Cyprian: Q: Do you have any other lawsuits that you've been involved in? A: I had – like I said, I broke my arm. I didn't have no lawsuit, but I should'a had one because my arm worry me now. . . . Q: Do you know whether you have a lawsuit against the manufacturers? A: Huh-uh (Negative response.) (Exhibit 14, Cyprian depo. at 204-05.). There can be no fraudulent concealment where Illinois Central deliberately did not avail itself of the opportunity to cross-examine Turner about prior litigation.

The Mississippi Supreme Court has held that "[t]o conceal, there must be something done – there must be some effort to hide, to mislead, to deceive." *Matthews v. Sontheimer*, 39 Miss. 174, 1860 LEXIS 40, **20 (October 1860). The court further stated:

> [W]e insist that a party, to "conceal," in the sense of the statute, must be active, not passive; he must do something actually to deceive or throw those interested off their guard, refuse to answer proper inquiries, or withhold information which can be obtained from no other person, **and if that information can be obtained by due diligence, from him or others, there is no concealment**.

*Id.* at **21. (Emphasis added.)

It is significant that the Interrogatory Responses at issue in *Turner* and the Pulmonary Questionnaire at issue in *Harried* were both documents served on Illinois Central in lawsuits. In fact, Guy and Brock filed a Notification of Service of the Interrogatory Responses as part of an open court record. Guy and Brock did not, and could not, conceal or hide the information in the Interrogatory Responses or the Pulmonary Questionnaire. The Mississippi Court of Appeals has held that "the doctrine of concealed fraud will not toll the statute of limitations where the instrument is recorded as a matter of public record." *McWilliams v. McWilliams*, 970 So. 2d. 200, 203 (Miss. Ct. App. 2007) (citing *Carder v. BASF Corp.*, 919 So. 2d 258, 262 (Miss. Ct. App. 2005)) (holding that "[w]hen the information is placed in the public domain, the doctrine of fraudulent concealment ceases to be applicable"). It is indisputable that the documents which form the basis of Illinois Central's fraud claim have been in the "public domain" and in the possession of Illinois Central itself since 2002 and 2003.

## Due Diligence

There can be no concealment to toll the statute of limitations when the information can be obtained by exercising reasonable diligence. See, *Matthews*, *supra*, 1860 LEXIS at **21. In *Ill. Cent. R. R. v. McDaniel,* 951 So. 2d 523 (Miss. 2006), *cert. denied*, 127 S. Ct. 1332 (2007), Illinois Central argued that the discovery rule applied to bar a claim where the plaintiff had been diagnosed with pulmonary fibrosis over three years before his claim for asbestosis was filed. The Mississippi Supreme Court agreed and held:

> **Actual knowledge by the plaintiff of the governing cause of the injury is not necessary** to a finding that the cause of action has accrued. . . . As recognized by the courts, **the discovery rule imposes an affirmative duty on plaintiff to investigate the potential cause of his injury**. This is a fair rule since the discovery rule should not be abused by plaintiffs who are aware that an injury exists yet choose to ignore it

and fail to investigate the cause. Obviously, such a course of wilful inaction has the potential of visiting prejudice upon defendants who may be blind-sided by lawsuits long after the complained-of negligence.

*Id.* at 534 (quoting *Williams v. S. Pac. Trans. Co.*, 813 F. Supp. 1227 (S. D. Miss. 1992)). (Emphasis added.) Illinois Central is subject here to the same duty of investigation that the Supreme Court ordered in its favor in *McDaniel*.

Illinois Central specifically undertook the duty of investigation and presumably exercised due diligence on all claims submitted by Guy and Brock for settlement <u>before</u> it agreed to pay money for a release. The August 6, 2002, settlement agreement between Illinois Central and Guy and Brock was a contingent settlement agreement. As agreed to by the parties, "Illinois Central [had] the right to reject or defer any case submitted for processing that [did] not meet the documentation requirements set forth above, pending further negotiations with you." (Exhibit 1.)

At least five law firms represented Illinois Central in the *Eakins* case: Gundlach Lee Eggman Boyle and Roessler (Belleville, Illinois); Wise Carter Child & Carraway (Jackson, Mississippi); Upshaw Williams Biggers Beckham & Riddick (Greenwood, Mississippi); Edward Blackmon, Jr. (Canton, Mississippi) and Harkins Cunningham (Washington, D. C.). Illinois Central assigned its lawyers and their staff the job of verifying the information submitted to it by Guy and Brock claimants. Illinois Central also retained an outside consultant named John Murphy, who was an investigator "in charge of reviewing these cases and doing what they call due diligence." (Exhibit 15, Thomas Peters' depo. at 57.) Mr. Murphy purportedly reviewed all records collected or summaries of them, including medical, employment, employee personnel file, social security, military, and anything else requested by Illinois Central. *(Id.* at 61.) Illinois Central has refused to respond to deposition questions or

written discovery requesting documents or information it may have obtained from reviewing these records.

Further, it is clear that Illinois Central did check civil and criminal records (the very information Illinois Central complains Turner and Harried did not disclose), **including for Harried himself**. (See Exhibit 16, Billing Detail re Harried.) On October 1, 2003, before Illinois Central settled Harried's case, Illinois Central reviewed all court filings in Jefferson County and Carroll County for Harried. Specifically, Illinois Central checked civil, criminal, and property records. This investigation should have revealed Harried's status as a plaintiff in the *Cosey* asbestos case.

This Court (Judge Lee) has described the requirement of reasonable diligence as follows:

> The would-be plaintiff need not have become absolutely certain that he had a cause of action; he need merely be on notice – or *should* be – that he should carefully investigate the materials that suggest that a cause probably or potentially exists. Neither need the plaintiff know *with precision* each detail of breach, causation, and damages, but merely enough to make a plain statement of the case backed by evidence sufficient to survive a summary judgment motion.

The [Mississippi Supreme Court] court [has] explained that

> **The plaintiffs need not have actual knowledge of the facts before the duty of due diligence arises; rather, knowledge of certain facts which are "calculated to excite inquiry" give rise to the duty to inquire. The statute of limitations begins to run once plaintiffs are on inquiry that a potential claim exists.**

*Pierce v. Clarion Ledger* 433 F. Supp. 2d 754, 759 (S. D. Miss. 2006) (quoting *First Trust Nat'l Association v. First Nat'l Bank of Commerce*, 220 F.3d 331, 337 (5th Cir. (Miss.) 2000)) (citing *Smith v. Sanders*, 485 So. 2d 1051, 1052 (Miss. 1986)). (Emphasis added.) *See also Speed et al. v. Amsouth Bankcorporation, et al.,* 2005 LEXIS 41619, *23 (S.D. Miss. March 30, 2005), where this Court (Judge Lee) stated:

Under the law, "once a person has knowledge of such facts as to excite the attention of a reasonably prudent man and to put him upon guard and thus to incite him to inquiry, he is charged with notice, equivalent in law to knowledge, of all those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed."

(quoting *First Nat'l Bank of Laurel v. Johnson*, 171 So. 11, 14 (Miss. 1936)).

In *Pierce*, this Court held that the plaintiff could not rely on a fraudulent concealment defense to toll the statute of limitations against the defendant, The Clarion Ledger. Pierce had filed a lawsuit in 2003 against Frank Melton and Warren Buchanan, seeking damages as a result of a memo leaked to the press. In 2005 (after the statute of limitations had run) Pierce's attorney interviewed the memo writer, Ana Radelat, and realized Pierce might have a claim against her. This Court held Pierce's claim against Radelat and The Clarion Ledger was barred by the statute of limitations and reasoned as follows:

[P]laintiff has offered no explanation why his attorney made no attempt to interview Radelat prior to expiration of the limitations period, and indeed why that was not done until nearly two years after plaintiff had filed his lawsuit against Frank Melton. Nor does plaintiff explain why his attorney did not depose Warren Buchanan prior to October 2004, or why he did not depose Melton himself until September 2005, nearly two-and-a-half years after he sued Melton. By no means can plaintiff's actions (or inaction) be characterized as reasonably diligent. Accordingly, the statute of limitations was not tolled and had run long before he filed this lawsuit.

*Id.* at 759-60.

Illinois Central here acted exactly like the plaintiff in *Pierce*, and chose to do nothing to pursue a lawsuit against Guy and Brock in a timely manner. Illinois Central was making fraud allegations against Guy and Brock as early as January 2004, well over three (3) years before Illinois Central sued them in 2008. It would be disingenuous for Illinois Central to argue that it wasn't "on notice" of a possible claim against Guy and Brock in 2004, when Illinois Central wrote numerous letters to Guy

and Brock, filed multiple pleadings in at least four cases[10], participated in four hearings before the Jefferson County Circuit Court, and filed two appeals to the Mississippi Supreme Court[11], where the ongoing theme by Illinois Central was that Guy and Brock and their claimants had either knowingly or recklessly submitted falsehoods in documents to Illinois Central for the purpose of obtaining settlement monies. Pertinent excerpts from these documents and hearings are set forth below.

At some time prior to January 2004, and by using a medical authorization and identification of treating physicians provided by Guy and Brock, Illinois Central discovered that claimant Fred Tyler had been a plaintiff in the 1995 Jefferson County *Cosey* asbestos case filed by Attorney Bob Pritchard. Illinois Central allegedly made this finding after review of Tyler's medical records with Dr. Willie McArthur, and a notation therein stating that Tyler was referred by "Atty Pritchard." (Exhibit 17, January 21, 2004, correspondence from Peters to Guy and Brock.) Upon learning of Tyler's prior involvement in *Cosey*, Guy and Brock voluntarily dismissed him from *Eakins*.

In January 2004 Illinois Central was on notice that at least one of the Guy and Brock claimants had previously been a plaintiff in a very large (3600 plaintiff) asbestos case in Jefferson County, and that he had not disclosed that information in Interrogatory Responses or in his Pulmonary Questionnaire. Illinois Central was represented by five law firms and could have easily obtained the *Cosey* complaint to determine if there were other Guy and Brock claimants who were also *Cosey* plaintiffs. Reasonable diligence required Illinois Central to make further inquiry then, not several

---

[10]     *Robert Allen, et al. v. Illinois Central Railroad Co.*, Civil Action No. 2000-100; *Elbert Eakins v. Illinois Central Railroad Co.*, Civil Action No. 2001-65; *William L. Barnes, et al. v. Illinois Central Railroad Co.*, Civil Action No. 2002-202; *Irby, et al. v. Illinois Central Railroad Co.*, Civil Action No. 2002-363.

[11]     *Illinois Central Railroad Company v. Acuff, et al.*, No. 2005-CA-00388-SCT; and *Illinois Central Railroad Company v. McDaniel, et al.*, No. 2005-CA-00389-SCT.

years later.[12]  Instead, Illinois Central waited until 2008 to sue Guy and Brock for alleged fraud occurring in 2002 and 2003.

On January 21, 2004, Thomas Peters, one of Illinois Central's lawyers with the Gundlach, Lee, Eggmann, Boyle & Roessler firm in Illinois, wrote Guy and Brock a lengthy letter which alleged fraud by claimant Fred Tyler, and possibly others:

> While some of the cases below concern medical issues, the bulk of the claims are being further investigated based upon revelations we have recently experienced with respect to claimant Fred Tyler.  In his questionnaire, Mr. Tyler made numerous representations which cannot be characterized favorably under any circumstances. . . .
>
> Through our efforts, we have uncovered two facts which are directly contrary to the representations in the questionnaire and the answers to interrogatories.  Dr. W. L. McArthur saw Fred Tyler on September 7, 1995, at his office in Jefferson County.  Dr. McArthur diagnosed Mr. Tyler at that time with asbestosis and silicosis. . . .  After further investigation, we learned that Mr. Tyler is a plaintiff in a lawsuit filed May 6, 1999, in the Southern District of Mississippi, (*Cosey v. E. D. Bullard*, 99-cv-164). . . . **The explanation for submissions made by Mr. Tyler point convincingly towards fraud, but we will await any other explanation Mr. Tyler may have regarding these disconcerting facts**.
>
> Due to the results of the investigation of Mr. Tyler, **we have grave concerns concerning many of the plaintiffs**, especially those claimants for whom we know have filed claims against one entity or another, for one claim or another.  In what we would call an exercise of extreme good faith on behalf of the Illinois Central Railroad, we have not blocked payment of all claims pending investigation.

(Exhibit 17, at pp. 6-7.)  (Emphasis added.)

Both Turner and Harried, in Interrogatory Answers and Pulmonary Questionnaire, had advised that the same Dr. Willie McArthur who had diagnosed Fred Tyler was their family physician from 1976 to 2001 for Turner, and from 1991 to 2003 for Harried.  At the time of this letter from Mr. Peters,

---

[12]    As noted above, records produced by Illinois Central (Exhibit 16) reflect someone billing it for checking court records in October 2003 in the *Harried* case - **before** consummation of settlement in November 2003.

Illinois Central and its five law firms and its Consultant Murphy were complaining of fraud against Guy and Brock because of failure to disclose that Fred Tyler had been diagnosed with asbestosis by Dr. McArthur and was a plaintiff in the *Cosey* case in Jefferson County, the home of both Turner and Harried. A sophisticated litigant with the resources which Illinois Central had employed was clearly on notice to check the court records in the *Cosey* case to see if claimants other than Fred Tyler were included.

On February 13, 2004, Mr. Peters wrote another letter to Guy and Brock where he described additional problems with information submitted by claimants. (Exhibit 18.) For instance, Mr. Peters demanded an "explanation" for information omitted from the Pulmonary Questionnaire of claimant S. Chwascinski. And Mr. Peters stated that claimant J. L. Reeves might have another lawsuit in Florida which he did not disclose. At the close of the letter, Mr. Peters stated, "[D]espite learning of additional circumstances . . . **which call into question the reliability of all questionnaires,** we have informed you of our continuing efforts to review and assess claims. . . ." (*Id.*) (Emphasis added.)

In March 2004, at the insistence of Illinois Central's counsel, Guy and Brock signed a handwritten agreement with Illinois Central to address the "Fred Tyler" problem (failure to disclose a prior diagnosis and lawsuit).[13] (Exhibit 19.) In this agreement, Illinois Central required Guy and Brock to submit proof that they had procedures in place to "ensure accurate information on pulmonary questionnaires and expert medical information" and to provide written representation as to "further questioning of outstanding claims." **Four years later** Illinois Central filed suit alleging that Guy and

_____

[13]    In *Acuff*, the Mississippi Supreme Court observed that the "singular reason the parties entered into the [March 2004 handwritten agreement] was to address ICRR's concerns about inaccurate information being provided by some plaintiffs in their Pulmonary Questionnaires. (Exhibit 3, 950 So. 2d at 954 n. 3.)

Brock were either fraudulent or "reckless" in the way they completed litigation paperwork – the very thing Illinois Central complained of, and sought assurances for, in 2004.

In a letter dated April 29, 2004, Mr. Peters again wrote Guy and Brock and stated that Pulmonary Questionnaire responses were so unreliable that **"the entire [settlement] procedure is called into question**." (Exhibit 20, April 29, 2004, correspondence from Thomas R. Peters to Guy and Brock.) (Emphasis added.)

On May 6, 2004, Mr. Peters again wrote to Guy and Brock about the Pulmonary Questionnaire and further settlement procedures, and stated: "**Once again procedures have yielded less confidence that we have only paid and will pay legitimate claims, not more confidence.**" (Exhibit 21, May 6, 2004, correspondence from Peters to Guy and Brock.) (Emphasis added.)

In June 2004, and again in August 2004, the parties appeared before the Jefferson County Circuit Court on Guy and Brock's motions to enforce the settlement agreement due to Illinois Central's failure to make payments. Illinois Central opposed the motions at both hearings on the basis that it had no confidence in the settlement procedure. At the hearing in June 2004, Illinois Central complained to the court that Guy and Brock had not provided "assurances" regarding their settlement procedure, and that the entire settlement might be contaminated with false information:

> In fact, when we came here on March 29th, Your Honor, they agreed – we entered into an agreement to provide us the assurance we needed to pay their many claims, and they didn't do it.

(Exhibit 7, June 21, 2004, hearing transcript at 1291.)

Well, our biggest problem with that, Your Honor, then is with – without knowing what happened with Mr. Tyler, we have no assurance of how it's happened with other people. We get these questionnaires on all these kinds of things, and if everyone's made a mistake, we feel –

*(Id.* at 1294.)

We're worried about systemic problems, Your Honor.

*(Id.* at 1304.)

Illinois Central appeared before the circuit court again in August 2004 with the same complaints regarding the Guy and Brock settlement procedures:

[Fred Tyler] raised a red flag with my client. That made them wonder how many – whether they could rely on these submissions from these other plaintiffs that were part of this settlement procedure that we're – been attempting to go through.

(Exhibit 22, August 2, 2004, hearing transcript at 1525.)

In October 2004, Illinois Central appeared again before the Jefferson County Circuit Court in *Eakins* and *Allen* with a motion asking the court to dismiss all unsettled claims as a sanction for the alleged filing of 58 false affidavits.[14] These fraud accusations against Guy and Brock were rejected by the circuit court.[15] Unable to accept the court's ruling, on November 18, 2004, Illinois Central filed

---

[14] The affidavits were submitted by Guy and Brock claimants in an effort to comply with the March 2004 handwritten agreement. The affidavits, all identically worded, were meant to disclose prior asbestos litigation before the filing of *Eakins*, which, according to Illinois Central, would have been a statute of limitations defense and a bar to settlement. The 58 affiants had not participated in any asbestos litigation filed prior to *Eakins*. Some of them had, however, been claimants in litigation filed after *Eakins* and these claims were not disclosed in the affidavits. Illinois Central has sought sanctions, including wholesale dismissal of the claims, from the Jefferson County Circuit Court and the Mississippi Supreme Court, but has been denied each time.

[15] The trial court found that alleged information omitted from the affidavits was by inadvertence, and that there was no prejudice to Illinois Central. (Exhibit 8, October 15, 2004, hearing transcript at 1411.)

a motion to reconsider the trial court's refusal to sanction Guy and Brock. This motion was purportedly based on "newly-discovered evidence." In that pleading, filed over three (3) years before Illinois Central sued Guy and Brock, Illinois Central repeatedly accused them of knowingly submitting false information:

> Plaintiffs **and their counsel** knew [the content of affidavits and questionnaires were] false. (p. 3)

> . . . on . . . 200 occasions, Plaintiffs supplied false questionnaires and/or false affidavits and/or discovery responses. (p. 4)

> . . . over 30 Plaintiffs in <u>Eakins</u> and <u>R. Allen</u> filed false affidavits failing to disclose their presence in <u>Dresser</u> and/or <u>American Optical</u>. (p. 7)

> The acquisition of these documents are needed (if the Court has not already seen enough) to further demonstrate the knowledge of **Plaintiffs and Plaintiffs' counsel of these other cases that were intentionally hidden from the Defendant in the pulmonary questionnaires and sworn affidavits.** (p. 10)

(Exhibit 9.) (Emphasis added.)

On January 24, 2005, the Circuit Court of Jefferson County heard argument on the motion to reconsider the court's refusal to sanction Guy and Brock and their claimants by dismissing cases. Although this hearing is within the three-year limitations period for the claims against Guy and Brock in *Harried*, it falls outside the statute of limitations in *Turner*. Illinois Central again made arguments that denigrated Guy and Brock:

> Number one, [Guy and Brock] took the position that these old lawsuits that were not listed in the pulmonary questionnaires and affidavits were not such that they would give us the statute of limitations defense, so therefore, they never intended to disclose those lawsuits.

(Exhibit 10, January 24, 2005, hearing transcript at 1574.)

> [After Fred Tyler] bells go off in our head and then we begin our investigation, Your Honor, in this county and other counties . . . .

THE COURT: So you begin your investigation after you had already settled your cases, right?

[Beckham] And after we find out that **plaintiff's counsel** is providing us with information that is, in fact, not true, yes, sir.

*(Id.* at 1592.) (Emphasis added.)

For the fourth time, the circuit court rejected Illinois Central's claims of fraud. Shortly thereafter, Illinois Central took two appeals to the Mississippi Supreme Court arguing, *inter alia*:

This appeal concerns the efforts by Appellees **and their counsel** to extract a settlement from ICRR despite the fact that it does not owe them, and in the face of a pervasive pattern of deception and false sworn statements submitted by Plaintiffs **and representations made by their counsel** to the trial court.

(Exhibit 23, Brief of Appellant at Bates-numbered page 1352.) (Emphasis added.)

The Supreme Court summarily rejected the claims.

## III. CONCLUSION

For **four years** before it sued Guy and Brock, Illinois Central made claims of fraud against them in the Circuit Court of Jefferson County and the Supreme Court of Mississippi. Those claims rejected, Illinois Central raises a purported "new" claim of fraud as to two claimants, Turner and Harried, and their counsel, Guy and Brock. But Illinois Central was on notice of every fact giving rise to those claims before the end of the year in 2003. Mississippi's three-year statute of limitations had long since expired when Illinois Central made Guy and Brock defendants to these lawsuits in 2008. The Court should dismiss Guy and Brock.

Respectfully submitted,

WILLIAM S. GUY and THOMAS W. BROCK
By and through their attorneys

  s/ Kathy K. Smith
KATHY K. SMITH (MSB #10350)

OF COUNSEL:

John G. Corlew (MSB #6526)
Kathy K. Smith (MSB #10350)
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
Post Office Box 650
Jackson, MS   39205
Phone:  (601) 965-1900
Fax:  (601) 965-1901

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2008, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to the following:

**Robert Michael Cunningham , II**
mikecunningham07@bellsouth.net,katiejacks01@bellsouth.net

**Wayne Dowdy**
waynedowdy@waynedowdy.com

**William S. Guy**
jguy@guylaw.com,jdaniel@guylaw.com

**Daniel J. Mulholland**
mulhollanddj@fpwk.com,marilynm@fpwk.com

**Pritchard Law Firm, In Receivership**
mikecunningham07@bellsouth.net

**Heather J. Wilkins**
wilkinshj@fpwk.com,yeatesev@fpwk.com

and I hereby certify that I have mailed by United States Postal Service the document to the

following non-ECF participants:

None.

  s/ Kathy K. Smith                                     
KATHY K. SMITH