# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

ILLINOIS CENTRAL RAILROAD COMPANY                               PLAINTIFF

VERSUS                          CIVIL ACTION NO. 5:06cv160-DCB-JMR

WILLIE R. HARRIED, et al.                                      DEFENDANTS

## OPINION & ORDER

This matter comes before the Court on a Motion for Summary Judgment [docket entry no. 99] filed by the defendants William Guy and Thomas Brock ("Guy and Brock" or "Defendants"). Having carefully considered the Motion, the plaintiff's responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND

The plaintiff in this case is Illinois Central Railroad Company ("Illinois Central" or "IC"). The first defendant is Willie Roy Harried ("Harried"), a former plaintiff in an asbestos-related lawsuit against Illinois Central styled <u>Elbert Eakins, et al. v. Illinois Central Railroad Co.</u>, No. 2001-65 (Jefferson County Ct. Miss.) ("<u>Eakins</u>"). The other two defendants are William S. Guy and Thomas W. Brock ("Guy and Brock"), Harried's counsel in the <u>Eakins</u> action.

The <u>Eakins</u> action was filed by Guy and Brock in the Circuit Court of Jefferson County, Mississippi, in 2001. Therein, 175

plaintiffs, including Harried, sought to recover from Illinois Central for injuries they sustained as a result of their exposure to asbestos during employment with the railroad. IC and Guy and Brock reached a settlement in the Eakins action in August 2002. As stipulated in the settlement agreement, before Illinois Central would pay any claim, Guy and Brock would obtain from each claimant a completed "Pulmonary Questionnaire," which disclosed various information about the claimant including his prior medical treatment for asbestos-related injuries as well as any prior involvement in other asbestos-related lawsuits.

Harried provided his sworn responses to the Pulmonary Questionnaire on May 19, 2003. In response to a question pertaining to his involvement in other asbestos-related suits, Harried disclosed that he was a plaintiff in an action styled Lee Anderson, et al. v. Garlock, Inc., et al., Civil Action No. 2002-255 (Jefferson County Ct. Miss.) ("Anderson"), a case that was filed after the Eakins action. Harried did not, however, disclose that he was a plaintiff in a lawsuit that had been filed in the Circuit Court of Jefferson County, Mississippi, in 1995 styled David Cosey, et al. v. E.D. Bullard Co., et al., Civil Action No. 95-0069 (Jefferson County Ct. Miss.) ("Cosey").

After Harried completed the Pulmonary Questionnaire, Guy and Brock delivered Harried's sworn responses to Illinois Central. Illinois Central subsequently delivered a settlement check for

$90,000.00 to Guy and Brock in settlement of Harried's claim.

This procedure was followed in the settlement of many of the claims in the Eakins action. In January 2004, however, Illinois Central discovered that Fred Tyler ("Tyler"), another of the plaintiffs in the Eakins action, had provided inaccurate information on his Pulmonary Questionnaire. Specifically, after reviewing medical records obtained from Tyler's treating physician in accordance with the settlement agreement, Illinois Central learned that Tyler had failed to disclose his involvement as a plaintiff in the Cosey lawsuit that had been filed in 1995. Tyler's involvement in this earlier suit gave Illinois Central a statute of limitations defense against his claim. Upon this discovery, Guy and Brock voluntarily dismissed Tyler from the Eakins case.

After discovering the "Fred Tyler issue", Illinois Central began to question whether the procedures employed by Guy and Brock were sufficient to obtain the most accurate information from their clients. In March 2004, Guy and Brock signed a handwritten agreement with Illinois Central wherein Guy and Brock agreed to provide written assurances regarding the procedures they had used to obtain accurate information on the Pulmonary Questionnaires. Later, in a letter dated April 22, 2004, Guy and Brock asserted that the issue of inaccuracies on the Pulmonary Questionnaires was not a "systemic problem" and agreed to provide affidavits from all

3

remaining unpaid Eakins plaintiffs regarding whether they had been involved in prior asbestos-related litigation.

The unpaid Eakins plaintiffs subsequently submitted affidavits in accordance with this agreement. Therein, the affiants represented that they had not been involved in any asbestos case other than Eakins. Illinois Central later discovered that some of these affidavits failed to disclose the plaintiffs' involvement in other asbestos-related cases, including McNeil v. Dresser Industries, Inc., No. 2002-283-CV9 ("Dresser") and Phillip Acuff v. American Optical Corp., et al., No. 2003-159-CV8 ("American Optical"), both of which were filed after the Eakins action. Upon this discovery, Illinois Central sought to have the plaintiffs' claims dismissed based on their misrepresentations.

The circuit court conducted a series of hearings related to the affidavits and questionnaires. During these hearings, IC not only argued that dismissal was proper because certain Eakins plaintiffs had intentionally failed to disclose their involvement in Dresser and American Optical but also again raised its concerns that the Fred Tyler issue was a recurring one. Guy and Brock took responsibility for the inaccuracies related to American Optical and Dresser, claiming that they mistakenly thought that they were to disclose only prior asbestos litigation. As such, Guy and Brock explained, they did not instruct the Eakins plaintiffs to include their involvement in Dresser and/or American Optical because those

4

cases were filed after Eakins. As to the Fred Tyler issue, Guy and Brock maintained their position that it had not happened with any other claimants. Ultimately, the circuit court ruled that dismissal of the plaintiffs' claims was not warranted because the plaintiffs' failures to disclose their involvement in Dresser and American Optical (post-Eakins cases) was not intentional and did not prejudice IC. The evidence before this Court does not show that the circuit court made any rulings with regard to other cases similar to that of Fred Tyler.

After the circuit court denied Illinois Central's motion to dismiss, Illinois Central filed a motion for reconsideration. Illinois Central's motion to reconsider was denied on January 28, 2005. Illinois Central appealed that decision to the Mississippi Supreme Court, where the case was affirmed on August 3, 2006.

Illinois Central then instituted the instant action in this Court on November 22, 2006, by filing a complaint solely against Willie Harried. Therein, Illinois Central pled a single fraud claim against Harried and sought a judgment for $90,000.00, attorney fees, expenses, punitive damages, and pre- and post-judgment interest as relief therefor. Illinois Central alleged that it was defrauded by Harried when, in answering a sworn questionnaire during the settlement of the Eakins case, Harried intentionally failed to disclose that he had made an asbestos claim in an earlier action styled David Cosey, et al. v. E.D. Bullard

5

Co., et al., No. 95-0069 (Jefferson County Ct. Miss.) ("Cosey"). IC claimed that if Harried had disclosed his prior Cosey claim, it would not have paid Harried and his attorneys Guy and Brock $90,000.00 in settlement of his Eakins claim because such disclosure would have revealed that Harried's Eakins claim was time-barred by the three-year statute of limitations period of the Federal Employer Liability Act, 53 STAT. 1404, 45 U.S.C. §§ 51-60 (2006).

As part of discovery in the case, IC deposed Harried on May 15, 2007. At that time, Harried testified that prior to his settlement in the Eakins action he had informed Guy and Brock, his attorneys in the Eakins action, of his prior involvement in the Cosey litigation. Soon thereafter, Illinois Central sought leave to file an amended complaint to add Guy and Brock as defendants in its pending fraud action. On January 10, 2008, this Court entered an order granting Illinois Central's request.

Illinois Central filed its First Amended Complaint on January 17, 2008. Therein, IC maintains its original fraud claim against Willie Harried. As to Guy and Brock, Illinois Central brings one count of fraud and one count of breach of the duty of good faith and fair dealing. Specifically, Illinois Central alleges that Guy and Brock are liable by way of their either knowing or reckless concealment of the fact that Harried had been a plaintiff in the Cosey action, which information Illinois Central posits would have

6

provided it a defense in the Eakins action based on statute of limitations. This concealment of the Cosey action, the plaintiff contends, misled Illinois Central into entering the settlement agreement with Harried in the Eakins case.

On December 8, 2008, Guy and Brock filed their first motion for summary judgment wherein they argue that the plaintiff's claims are barred by the applicable statute of limitations. Illinois Central filed its response in opposition on January 8, 2009. Guy and Brock filed their rebuttal on May 15, 2009. A surreply was filed by Illinois Central on June 16, 2009. Guy and Brock filed a surrebuttal on June 25, 2009. This motion and all responses thereto now are before the Court.[1]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] The party

---

[1] On May 15, 2009, Guy and Brock filed their second motion for summary judgment. Harried joined the motion on June 11, 2009. The Court will address the defendants' second motion for summary judgment in a later order.

[2] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## III. ANALYSIS

Guy and Brock assert that Illinois Central's fraud claim is barred by the applicable statute of limitations, which the parties do not dispute is three years from the date the cause of action accrued pursuant to Mississippi Code § 15-1-49.[3] The Court also understands the parties to agree that the cause of action accrued, at the latest, on November 25, 2003, when the settlement between Illinois Central and Harried was consummated. The original complaint in this case was filed on November 22, 2006, but only named Harried as a defendant. Guy and Brock were not added as defendants until Illinois Central filed its amended complaint on January 17, 2008, over four years after the cause of action accrued. Since this exceeds the three-year limit, Guy and Brock argue, Illinois Central's claims against them must be dismissed as untimely. In response, Illinois Central contends that the statute of limitations was tolled by reason of Guy and Brock's fraudulent concealment of Illinois Central's claims.

The Court begins with Guy and Brock's argument that Illinois Central is barred from alleging fraudulent concealment because it was not specifically alleged in the amended complaint. This position is contrary to Mississippi case law. Indeed, in Smith v.

---

[3] "All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-49(1).

9

Franklin Custodian Funds, Inc., 726 So.2d 144, 147 (Miss. 1998), the Mississippi Supreme Court rejected an argument by the defendant that the plaintiff was required to particularly plead fraudulent concealment in the complaint. As such, Guy and Brock's argument too is rejected, and the Court proceeds to the merits of Illinois Central's assertion of fraudulent concealment.

Illinois Central's position is that the statute of limitations was tolled pursuant to Mississippi's Fraudulent Concealment Statute which reads as follows:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67. In order for a plaintiff to show that the limitations period applicable to his case was tolled by fraudulent concealment, he must show "'both (1) an affirmative act to conceal the underlying tortious conduct, and (2) a failure to discover the factual basis for the claims despite the exercise of due diligence.'" Smith v. First Family Financial Services, Inc., 436 F.Supp.2d 836, 840-41 (S.D. Miss. 2006) (quoting Boone v. Citigroup, Inc., 416 F.3d 382, 391 n. 11 (Miss. 2004)). Additionally, "'[t]he affirmative act of concealment must have occurred after and apart from the discrete acts upon which the cause of action is premised.'" Id. (citations omitted).

Illinois Central bears the burden of proving that the statute of limitations was tolled. Ishee v. Liberty Nat. Life Ins. Co., 2006 WL 2524217 (S.D. Miss. Aug. 30, 2006) (unpublished) (citing Gulf Nat'l Bank v. King, 362 So.2d 1253, 1255 (Miss. 1978), Hall v. Dillard, 739 So.2d 383, 387099 (Miss. App. 1999)). "[I]n order to toll the limitations period to survive summary judgment, the plaintiffs must offer proof of a genuine issue of material fact that [Guy and Brock] engaged in an affirmative act of concealment and that they (the plaintiffs) acted with due diligence to discover their claims but were unable to do so." Id. (citing Robinson v. Cobb, 763 So.2d 888 (Miss. 2000)). This, Illinois Central has done.

First, Illinois Central has provided evidence that Harried made inaccurate representations during the settlement of his Eakins claim, namely that he failed to disclose his involvement in the Cosey action, which Illinois Central claims induced it to settle his claim in the Eakins action. Furthermore, Illinois Central has put forth evidence, in the form of Harried's deposition testimony, that Harried informed Guy and Brock of his involvement in the Cosey action before Guy and Brock filed Harried's claim in the Eakins action. Finally, Illinois Central has shown that Guy and Brock made repeated representations to Illinois Central that the information in the Eakins plaintiffs' pulmonary questionnaires and affidavits was accurate and that Guy and Brock were not responsible

11

for any misinformation.  These facts support IC's claim that Guy and Brock knowingly concealed Harried's involvement in Cosey and are sufficient to create a genuine issue as to whether Guy and Brock engaged in affirmative acts of fraudulent concealment.

Illinois Central has also provided sufficient evidence to create an issue of fact regarding the second element of fraudulent concealment--due diligence.  As to this second requirement, "the plaintiffs must show that they failed, despite the exercise of due diligence on their part, to discover the facts that form the basis of their [] claim."  In re Catfish Antitrust Litigation, 908 F.Supp. 400, 407 (N.D. Miss. 1995).  "'[T]he test on whether to toll the statute of limitations is whether a reasonable person similarly situated would have discovered potential claims.'" Pope, 992 So. 2d at 1198-99 (quoting Andrus, 887 So. 2d at 180)).

Illinois Central became aware of the Fred Tyler issue in January 2004.  It immediately confronted Guy and Brock with the situation by letter on January 21, 2004.  Guy and Brock addressed Illinois Central's concerns by explaining the Fred Tyler incident as an isolated occurrence and offering assurances about the accuracy of the remaining plaintiffs' disclosures.  On April 22, 2004, Guy and Brock further reassured Illinois Central by claiming that the problem was not "systemic" and offering to supply affidavits from all remaining plaintiffs to ensure that they had not been involved in prior asbestos litigation. (Defs.' First Mot.

12

for Summ. J. Ex. 6.)

Furthermore, Guy and Brock in open court ensured the full disclosure of all prior asbestos litigation. As noted earlier herein, during the settlement of the Eakins case, Illinois Central repeatedly raised the issue of the failure of the Eakins plaintiffs to disclose their involvement in the American Optical and Dresser cases. In explaining those omissions, Guy and Brock stated that they understood Illinois Central's request to be only for disclosure of prior asbestos litigation, not all asbestos litigation. Guy and Brock assured the circuit court and Illinois Central that all such prior litigation had been reported. As an example, during a motion hearing before Circuit Court Judge Lamar Pickard on June 21, 2004, Illinois Central expressed its concern of the conveyance of inaccurate information on the Pulmonary Questionnaires. (Defs.' First Mot. for Summ. J. Ex. 7.) In response to a question asked by the court about whether misinformation had been provided on any other Pulmonary Questionnaires, Brock responded, "No sir. It's not happened and not going to happen." (Def.'s First Mot. for Summ. J. Ex. 7 p. 5.)

In yet another proceeding before Judge Lamar on October 15, 2004, Brock described the Fred Tyler issue and stated affirmatively as follows:

> ...we [Guy and Brock] undertook voluntarily to assure the railroad that their -- that the remaining unpaid plaintiffs weren't involved in some similar prior litigation like back in the mid-'90s that might give rise

13

> to a potential statute of limitations defense. So we
> went to all of our unpaid plaintiffs, talked to them
> individually, I did it myself, and to make sure, you
> know, that they weren't involved in any prior asbestos
> litigation, they had not some other attorney that had
> represented them in an asbestos case that might give rise
> to a statute of limitations defense.

(Pl.'s Response, Ex. 4, p. 3).

Brock went on further to state that the <u>Eakins</u> plaintiffs "just know that they weren't in prior litigation." (Pl.'s Response Ex. 4, p. 3). Furthermore, in addressing the failure of the affidavits to disclose the <u>Eakins</u> plaintiffs' involvement in the <u>Dresser</u> and <u>American Optical</u> cases, Brock stated, "It's my fault, but I want the court and these attorneys to know that we were bending over backwards to try to establish to Illinois Central and these attorneys that these unpaid plaintiffs had not been involved in prior asbestos litigation." (Pl.'s Response, Ex. 4, p. 4)

In a third hearing, held on January 24, 2005, also before Judge Pickard, Illinois Central urged the court to reconsider its prior denial of its motion to void the settlement based on the <u>Eakins</u> plaintiffs' failure to disclose their participation in the <u>Dresser</u> and <u>American Optical</u> cases. In response, Brock yet again represented to the court that they had disclosed all prior litigation. (Pl.'s Response, Ex. 7, pp. 4-5, 10-11.)

Taken together, these facts show that Illinois Central repeatedly expressed its concern over the inaccuracies of the information provided by the <u>Eakins</u> plaintiffs. Their concerns were

14

met time and again with assurances from Guy and Brock that all prior litigation had been disclosed.  The Court finds that proof of these repeated inquiries and multiple assurances creates at least an issue of fact regarding whether Illinois Central exercised due diligence such that they should have discovered their claims against Guy and Brock prior to the expiration of the statute of limitations.

In conclusion, fact issues remain that preclude summary dismissal of this action based on the running of the statute of limitations.  Accordingly, Guy and Brock's motion for summary judgment based on the statute of limitations is denied.

**IT IS HEREBY ORDERED** that the first Motion for Summary Judgment [docket entry no. 99] filed by Guy and Brock is **DENIED**.

**SO ORDERED**, this the 4th day of August 2009.

                                              s/ David Bramlette
                                      **UNITED STATES DISTRICT JUDGE**