IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ILLINOIS CENTRAL RAILROAD COMPANY                      PLAINTIFF

V.                                                CASE NO. 5:06-cv-160-DCB-JMR

WILLIE R. HARRIED, WARREN R. TURNER, JR.,
WILLIAM S. GUY, AND THOMAS W. BROCK                  DEFENDANTS

**ILLINOIS CENTRAL RAILROAD COMPANY'S RESPONSE TO GUY AND BROCK'S MOTION TO DISMISS OR FOR OTHER RULE 37(b)(2)(A) SANCTIONS**

      Plaintiff Illinois Central Railroad Company ("IC") hereby responds to defendants Guy and Brock's ("G&B") motion to dismiss or for other Rule 37(b)(2)(A) sanctions (D.E. 205; "MTD") and supporting memorandum (D.E. 206; "MTD Mem.").

      G&B cite no basis for their motion other than Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure. *See* MTD at 1. That Rule authorizes sanctions only for violations of Court orders. But G&B identify no conduct of IC that approaches a violation of any order of this Court.

      Instead, G&B seek enforcement of a purported rule that simply by filing a complaint, a fraud plaintiff waives privilege and work product protection for all attorney-client communications and all attorney work product that is potentially relevant to the subject of reliance. *See* MTD Mem. at 4. That is not the law. And, even if it were, G&B's Rule 37(b)(2)(A) motion would still be foreclosed by the absence of any order of this Court compelling production of privileged documents to G&B on that (or any other) basis.

      G&B's MTD is legally frivolous. Furthermore, their motion papers are strewn with unsupported, inaccurate and misleading factual claims. The MTD should be denied and G&B should be compelled, as a sanction, to pay the costs and fees IC has incurred in responding both

1

to the MTD, and to G&B's motion in limine (*Harried* D.E. 207), which incorporates and relies on the MTD and adds nothing more than a claim for an alternative sanction for the same, non-existent, alleged violation, *see* D.E. 212.

I.  **G&B Fail To Demonstrate Any Violation By IC Of A Court Order, As Required By Rule 37(b)(2)(A)**

Rule 37(b)(2)(A) authorizes this Court to impose various sanctions only if a party "fails to obey an order to provide or permit discovery." Hornbook and precedent confirm what is clear from the text of Rule 37(b)(2)(A): sanctions are not authorized absent disobedience of a prior court order. *See, e.g.,* 8B C.A. Wright & A.R. Miller, *Federal Practice and Procedure* § 2289 (2009) ("Sanctions may be imposed in appropriate cases under subdivisions (c) and (d) of Rule 37 without a court order but not under subdivision (b)."); J. Gorelick, S. Marzen & L. Solum, *Destruction Of Evidence* § 3.4, at 74 & n. 23 (1989 & Supp. 1995) ("Federal court decisions ... unanimously agree that sanctions pursuant to Rule 37 may not be awarded absent violation of a court order"); *MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 934 (8th Cir. 2004) (imposition of discovery sanctions requires "an order compelling discovery, a willful violation of that order, and prejudice to the other party"); *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 624 (5th Cir. 1973) ("no sanction could be imposed [under Rule 37(b)] absent a failure and refusal to comply with the court order"). Neither IC, nor anyone associated with IC in this litigation, has disobeyed any order of this Court. G&B's motion is frivolous, because it makes no serious attempt to demonstrate such a violation.[1]

---

[1] In addition, the Fifth Circuit has "articulated several factors that must be present before a district court may dismiss a case as a sanction for violating a discovery order." *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994). Those requirements include: (i) willfulness or bad faith accompanied by a clear record of delay or contumacious conduct; (ii) the fact that the violation of the discovery order is attributable to the client instead of the attorney; (iii) substantial prejudice to the opposing party; and (iv) the inadequacy of any lesser sanction to substantially achieve the desired deterrent effect. *Id.* at 1380-81 (citations omitted). G&B's MTD neither acknowledges nor demonstrates satisfaction of those requirements.

### A. IC Has Fully Complied With This Court's Orders With Respect To Its Production Of Attorney Invoices

G&B first claim that IC has violated this Court's orders by (i) producing redacted attorney invoices relating to the *Eakins* litigation from the Wise Carter and Gundlach Lee law firms, and (ii) producing no *Eakins*-related attorney invoices from the Upshaw Williams, "Sippel Fletcher" and Harkins Cunningham law firms and attorney Ed Blackmon. MTD Mem. at 1-3 & 9 n.7. However, G&B cite no court order directing IC to produce, unredacted, all attorney invoices relating to the *Eakins* litigation. There is no such order. Indeed, G&B never moved for such an order, and never propounded such a discovery request.

The only order entered in this case that addresses IC's attorney invoices from the *Eakins* case is the Magistrate Judge's text-only order of June 12, 2009 in *Harried*, upheld over IC's objection by Judge Bramlette on September 22 (*Harried* D.E. 193, at 8), instructing IC to "fully respond" to G&B's Request for Production ("RFP") number 4 in *Harried*.[2] That RFP did not request every attorney invoice IC has from the multi-year, 176-plaintiff *Eakins* case. Rather, it requested documents, specifically including attorney bills and invoices, "which support your claim for damages as set forth in Paragraph[] 62 of the Amended Complaint" in *Harried*. *Harried* D.E. 113 (G&B's 2nd MTC), at 8-9. That claim for damages (which IC offered to withdraw, thereby mooting the RFP, on January 23, 2009, *Harried* D.E. 118 (IC's Resp. to G&B's 2nd MTC), at 9-10) was for IC's "attorney fees and expenses incurred in defending against ***Harried's*** previous claim against Illinois Central asserted in the *Eakins* Complaint." *Harried* D.E. 49 (Am. Compl.), at ¶ 62 (emphasis added). IC made a similar claim respecting Turner, but never made a claim for the attorney fees and expenses it incurred in defending

---

[2] G&B did not make a similar request in Turner and therefore did not and could not move to compel such invoices related to Turner. Nevertheless, on December 16, 2009, IC produced invoices related both to Harried and Turner. *See Harried* D.E 205 (MTD), Ex. 1.

3

against the other 174 plaintiffs in *Eakins*; G&B never requested invoices supporting that broader, non-existent claim; and the Court never compelled IC to respond to that broader, non-existent request. The Court ordered IC to comply with RFP 4 because it found that IC had not effectively withdrawn its Harried- and Turner-specific litigation expense damages claims, and because invoices supporting those Harried- and Turner-specific claims might be relevant to G&B's defenses in this lawsuit concerning Harried and Turner's *Eakins* claims.[3] *Harried* D.E. 193 (9/22 Order), at 8. But the Court did not order IC to produce *Eakins* invoices and billing details that do not specifically concern Harried and Turner's claims and settlements; G&B never requested them; and such invoices would be irrelevant both to IC's damages claim and to G&B's defenses in this case about Harried and Turner.

IC has fully complied with the June 12 order. It has produced all invoices and other documents in its possession, custody or control relating to the attorney's fees and costs it incurred in defending against (and reviewing and settling) Harried's and Turner's claims in *Eakins*. IC has properly redacted, as non-responsive and irrelevant, invoice entries relating to attorney's fees and costs incurred in its defense of other claimants' *Eakins* claims, including its fees and costs in *Eakins* for the years after Harried and Turner settled out of the case and other, general invoice entries that do not bear on IC's defense and settlement of Harried and Turner's claims. Likewise, IC has not produced *Eakins* invoices from attorneys or for periods not involving work on Harried's and Turner's claims.

G&B do not and cannot present any evidence that IC's production of attorney invoices violates any order of this Court. On page 3 and page 9 n.7 of the MTD Mem., G&B imply that

---

[3] G&B had argued that the invoices might be "relevant to what Illinois Central['s] counsel did in due diligence review of both Harried and Turner['s] claims." *Harried* D.E. 113 (G&B 2d MTC) at 9. That rationale could provide no basis for ordering production of attorney billing records that relate to the other 174 plaintiffs in *Eakins*, to work on the *Eakins* case after Harried and Turner settled out of it, or to general work on the case as a whole, as opposed to Harried's and Turner's specific claims.

4

IC is withholding invoices from Glenn Beckham, Janet Gilbert, Harkins Cunningham and Ed Blackmon relating to work done on Harried and Turner's claims in the *Eakins* case. But G&B have no basis for that claim. Moreover, it is false. As G&B know, Ms. Gilbert was IC's in-house litigation counsel at the time, *see Harried* D.E. 157 (IC's Resp. to G&B's 2nd MSJ), Attachment #1 (Garrett Decl. at ¶ 11), so did not send IC invoices. Harkins Cunningham did not work on any facet of the *Eakins* litigation until 2004, after Harried and Turner had settled out; it had no role in the *Eakins* settlement reviews, *see id.* (Garrett Decl. at ¶ 11), and its name does not appear on any privilege log entries that pre-date June 2004, *see* MTD Exs. 4 & 5. The first work on *Eakins* that Mr. Beckham's firm billed to IC also dates from 2004; like Harkins Cunningham, Mr. Beckham had no role in the *Eakins* settlement reviews, and his name does not appear on any privilege log entries that pre-date 2004. *See* Garrett Decl. at ¶ 11; MTD Exs. 4 & 5. And, Mr. Blackmon's firm conducted a diligent search of its office and was unable to locate any *Eakins* billing documents for the period 2001 through 2003 (*see* Ex. 1).

Nor can G&B claim in good faith that they understood this Court to have ordered a massive production of irrelevant, non-Harried- and Turner-related, invoices. G&B themselves have consistently taken the position that discovery in this case should be confined to Harried- and Turner-specific evidence, *see, e.g., Harried* D.E. 97 / *Turner* D.E. 71 (G&B's Resp. to IC's 1st MTC), at 9, 13, *Harried* D.E. 126 / *Turner* D.E. 101 (G&B's Resp. to IC's 2nd MTC), at 3, *Harried* D.E. 182 / *Turner* D.E. 147 at 5 n.10; and the Court has generally taken that position, *see generally* June 12, 2009 text-only orders.[4] Anyway, G&B's request for invoices, and the

---

[4] IC has sought narrowly focused pattern and practice discovery extending beyond Harried- and Turner-specific documents to illuminate a specific factual conflict, to test G&B's claims about their pattern and practice, and because it is relevant to the fraudulent concealment issue. *Harried* D.E. 119 / *Turner* D.E. 95 (IC's 2nd MTC), at 6, 9, 10, 12, 13-14; *Harried* D.E. 172 / *Turner* D.E. 138 (IC Obj. to MJ Ruling) at 4-5, 13-16. In contrast, G&B did not seek discovery beyond Harried- and Turner-specific evidence, with one exception – a generic request for all documents relating to efforts made by IC to determine if Harried, Turner "or any other plaintiff in *Eakins*" had ever filed a prior asbestos claim – and did not articulate a rationale for even that request. See *Harried* D.E. 113 / *Turner*

5

Court's order granting that request, simply did not call for non-Harried- and Turner-specific invoices.

### B. IC Has Fully Complied With This Court's Orders With Respect To Privilege Logs

As G&B note, consistent with Fed. R. Civ. Proc. 26(b)(5)(A), this Court "directed that 'all material which Plaintiff claims is privileged shall be listed in a privilege log.'" MTD Mem. at 2. IC has done precisely that, providing extensive, complete privilege logs. Exhibits 4 and 5 to G&B's motion are old versions of those logs. In accordance with the Court's September orders, IC served on G&B supplements to those logs more than a month before G&B's motion.

G&B's sole complaint about IC's privilege logs is that they do not list the redactions in the *Eakins* attorney invoices IC has produced. MTD Mem. at 2. That complaint ignores the obvious facts discussed above: the redactions are of non-responsive, non-relevant billing descriptions that relate to aspects of the multi-year, 176-plaintiff *Eakins* case other than Harried and Turner's individual claims and settlements. Because the redactions have nothing to do with privilege, they are rightly not addressed on the privilege logs.

### C. IC Has Not Been Ordered To Produce Privileged Documents To G&B

G&B imply that IC has withheld privileged documents from G&B in violation of this Court's September 22-23 orders (MTD Mem. at 4), and baldly assert that IC has withheld privileged documents from G&B in violation of the Magistrate Judge's June 12 orders (*id.* at 11-12). The text of the orders on which G&B rely clearly refutes their claims.

The passages G&B quote from this Court's September orders simply recognize that documents "show[ing] IC relied not on Guy and Brock's representations but rather some other

---

D.E. 89 (G&B 2d MTC), at 7 (relating to RFP 9 (*Harried*) /RFP 8 (*Turner*)). In its June 12 orders on G&B's second motion to compel, the Magistrate Judge properly sustained IC's objection to this grossly-overbroad request and directed IC to produce documents only with regard to Harried and Turner.

source of information … would be ***relevant*** to a ["no reliance"] fraud defense." *Id*. at 4 (emphasis added) (quoting Orders at 5-6). The September orders ***did not*** suggest that IC's privilege documents show any such thing; ***did not*** suggest that mere relevance trumps privilege; ***did not*** overrule IC's privilege and work product objections; and ***did not*** order IC to produce to G&B any privileged evidence.

Nor did the Magistrate Judge's June orders. G&B claim that those orders – on G&B's second motion to compel, relating to their RFPs 2, 3, 8 and 9 – overruled IC's privilege and work product objections and "directed production of all of those documents." MTD Mem. at 11-12. To the contrary, Magistrate Judge Roper actually ordered as follows:

> As to Requests for Production Nos. 1, 2, 3 and [8/9], Plaintiff should produce these documents with regard only to [Harried/Turner]. ***All material which Plaintiff claims is privileged should be listed on a privilege log.***

*See* text-only orders of June 12, 2009 granting in part and denying in part *Harried* D.E. 113 and *Turner* D.E 89 (emphasis added).

This Court affirmed the June 12 orders on September 22-23, 2009, and IC thereafter complied fully with their terms. IC made a supplemental production of non-privileged responsive documents in November, and concurrently supplemented its privilege logs. G&B did not challenge the privilege assertions made in IC's November logs. Contrary to G&B's unsubstantiated claim (MTD Mem. at 11), G&B never moved to compel the production of these post-2003 privileged documents.[5]

---

[5] G&B's first motion to compel sought an order directing IC "to produce the documents identified on [IC's] privilege logs in the *Harried* and *Turner* cases dated April 1, 2001 through December 2002 in the case of Mr. Turner and April 1, 2001, through December 2003 in the case of Mr. Harried." *Harried* D.E. 80 / *Turner* D.E. 54 (G&B's 1st MTC), at 6. G&B later served a second set of discovery requests seeking documents after the December 2002 (*Turner*) and December 2003 (*Harried*) dates specified in their first requests, to which IC responded, providing supplemental logs identifying responsive, post-2003 privileged documents.

G&B never moved to compel IC to produce the post-2003 privileged documents listed on its supplemental logs. The statement in IC's October 30, 2009 letter to the Court, *see* MTD Ex. 6, p. 2 ("Guy and Brock have never moved

It is obvious from simply reading the Court's orders that G&B cite that the Court has never ordered IC to produce privileged documents to G&B. And it is apparent from page 4 of their MTD Mem., where they continue to argue privilege issues, that G&B know the Court has not issued any order resolving those issues in their favor. G&B should be sanctioned for filing a motion based on the obviously false premise that the Court has issued such an order.

**D. G&B's Desire To Use IC's Privileged Documents And Information In Depositions Is No Substitute For The Violation Of A Court Order Required For Rule 37(b)(2)(A) Sanctions**

G&B's final complaint is that they would have liked to have used IC's privileged documents and obtained IC's privileged information at the depositions of Thomas Peters, Robert Andrekanic and John Murphy. MTD Mem. at 12-15. But they do not and cannot claim that the Court ordered IC to provide such privileged documents and information at those depositions.

We have addressed the Court's treatment of privileged documents above. G&B moved to compel privileged testimony from Mr. Peters; in order to aid its consideration of that motion, the Court ordered IC to produce an affidavit from Mr. Peters, which IC did, Letter from Tanya Ellis to Honorable John Roper (July 6, 2009); and G&B's motion is still before the Court. *See Harried* D.E. 80 (G&B's 1st MTC), at 3-5; *Harried* D.E. 88 (IC's Resp. to G&B's 1st MTC) at 7; text-only order of June 10, 2009 granting in part and denying in part *Harried* D.E. 80 (requiring IC to submit an affidavit for *in camera* review). G&B did not move to compel privileged testimony from Mr. Andrekanic. Nor did G&B move to compel privileged testimony from (non-lawyer) Mr. Murphy; indeed, G&B's sole complaint about his deposition appears to be that he did not recall the answers to some of G&B's questions. That is no basis for Rule 37(b)(2)(A) sanctions.

---

to compel production of Illinois Central's post-2003 documents"), is accurate. It is G&B's unsubstantiated claim to the contrary that is "completely untrue" (MTD Mem. at 11).

**II. G&B's "At Issue Waiver" Argument For Overruling IC's Privilege Objections Does Not Belong In A Sanctions Motion, And Is Meritless**

**A. G&B's Legal Argument Does Not Belong In A Sanctions Motion**

On page 4 of their MTD Mem., G&B assert broadly, and without reference to any specific documents, that IC's claims of privilege in the content of its confidential communications with its attorneys and their work product in the *Eakins* case are defeated by "at issue" waiver.[6] That is the kind of argument that belongs in a motion to compel – an argument addressed to what discovery the Court *should* order. But it provides no basis for a sanctions motion – it says nothing about whether IC has failed to do what the Court *has* ordered it to do.

**B. G&B's Legal Argument Represents An Improper Attempt To Re-Argue Issues Already Before The Court**

G&B already made the same "at issue waiver" argument in their first motion to compel (which related to requests for documents that pre-dated 2004; G&B have never moved to compel the post-2003 privileged documents that IC identified in response to later discovery requests), where they cited the same three cases they cite on page 4 of their MTD Mem.[7] IC responded, demonstrating that G&B's view of the "at issue waiver" doctrine is exaggerated and IC's

---

[6] Specifically, G&B claim that the agreed settlement protocol "called for" IC "to perform its own due diligence;" that IC "relied on its own professionals in making settlement decisions;" and that IC "has refused to disclose this information, claiming attorney-client privilege and/or work product." G&B's complaint is obscure. The terms of the settlement protocol – what it "calls for" – are in the record. *Harried* D.E. 49 (Am. Compl.), Ex. C; *Turner* D.E. 20 (Am. Compl.), Ex. E. IC has fully disclosed the identities of the professionals it employed to advise and assist it respecting the Harried and Turner settlement decisions and related matters in the *Eakins* litigation; IC has produced their invoices to G&B, insofar as relevant to Harried and Turner's claims and settlements; and G&B have deposed several of those professionals.

What G&B presumably seek, although they do not say so, is what IC has withheld on grounds of privilege and work product protection: the ***content*** of attorney-client communications and attorney work product created by and for IC in its defense of the *Eakins* litigation. G&B seek disclosure of their litigation adversary's confidential litigation strategies and assessments. It is not surprising that Mr. Guy, who still has other asbestos cases ongoing against IC, seeks that disclosure. But he is not entitled to it.

[7] *Harried* D.E. 81 / *Turner* D.E. 55 (G&B's 1st MTC), at 5.

privilege objections are valid.[8]  After G&B replied,[9] the Court ordered IC to submit the privileged documents at issue for *in camera* inspection only.[10]  IC fully complied.[11]  The Court has issued no further order.  G&B's re-hashing of the same issue in its MTD Mem. is an improper attempt to re-argue a fully briefed motion.

Moreover, the same issue is already pending before the Court in another, more apt, form, pursuant to IC's Rule 502(d) proposal.  When IC submitted its privileged documents for *in camera* review, IC went beyond its obligations under the Court's orders by adding a proposal under which IC would produce its most plausibly relevant privileged documents (and extracts of documents) – those that address what IC knew, and when it knew it, about Harried's and Turner's claims in the *Eakins* lawsuit and their prior claims and diagnoses relating to asbestos exposure – subject to the Court first entering a Rule 502(d) order limiting the scope and collateral effects of the privilege waiver.  *See Harried* D.E. 212 (IC's Resp. to G&B's MIL), Exs. A-C.  By accepting IC's proposal, the Court could enable G&B and the jury to be fully informed about the ***information*** on which IC relied when it settled with Harried and Turner, while preserving the confidentiality to which IC's ***strategic attorney-client deliberations*** are entitled.  However, G&B have flatly opposed the entire Rule 502(d) concept.[12]  Rather than obtain the discovery IC has offered, or even debate its scope, G&B take an all-or-nothing position, and seek to block the trial or preclude the jury from hearing any evidence – whether or

---

[8] *Harried* D.E. 88 / *Turner* D.E. 62 (IC's Resp. To G&B's 1st MTC), at 4-6.

[9] *Harried* D.E. 94 / *Turner* D.E. 68 (G&B's Rebuttal in Supp. of 1st MTC).

[10] TEXT ORDER ONLY granting in part and denying in part [*Harried* D.E. 80, Guy & Brock's First] Motion to Compel (June 10, 2009).

[11] *See Harried* D.E. 212 Ex. A (June 29, 2009 letter from T. Elllis to Magistrate Judge Roper enclosing documents listed on privilege log).

[12] *See Harried* D.E. 212 (IC's Resp. to G&B's MIL) at Ex. B (Oct. 22, 2009 letter from J. Corlew to Magistrate Judge Roper).

not privileged – going to reliance. *See* MTD at 1. G&B's position lacks legal support, and is calculated to impede and frustrate the fact-finding process.

At today's pre-trial conference, the Magistrate Judge indicated that he may soon enter an order pursuant to Rule 502(d). Unlike G&B's sanctions motion, a Rule 502(d) order will advance the fact-finding process and is clearly authorized by the Federal Rules. Once a Rule 502(d) order is entered, IC will have to comply or face sanctions. But G&B's present sanctions motion is improper, because there is no "privilege waiver" order to enforce.

### C. G&B's Legal Argument Is Meritless

Even if the Court were to treat G&B's sanctions motion as a motion (albeit untimely) to compel, and thus reach the privilege law issues, it should reject G&B's "at issue waiver" argument as meritless. As IC has already demonstrated,[13] the Mississippi Supreme Court has adopted a much narrower "at issue waiver" standard than the one G&B espoused. *See Jackson Med. Clinic for Women, P.A. v. Moore*, 836 So. 2d 767 (Miss. 2003). Under *Jackson*, it is not sufficient that one party's privileged evidence might, depending on what it says, be relevant and helpful to its adversary. Rather, "the 'at issue,' or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action." *Id.* at 773 (citation omitted). Thus, under Mississippi law, "at issue waiver" arises only when a party (i) specifically pleads reliance on its attorney's advice as an element of a claim or defense, (ii) voluntarily testifies regarding portions of the attorney-client communication, or (iii) specifically places at issue, in some other manner, the attorney-client relationship. *Id.*

IC has done none of those things. IC's complaints make no reference to legal advice; IC has not offered evidence of the contents of its confidential communications with its attorneys;

---

[13] *See, e.g., Harried* D.E. 88 / *Turner* D.E. 62 (IC's Resp. to G&B's 1st MTC), at 4-6; *Harried* D.E. 102 / *Turner* D.E. 76 (IC's Rebuttal re G&B's 1st MTC), at 7-8.

and IC has not placed at issue its relationship with its attorneys.  As (non-lawyer) Charles Garrett's declaration demonstrates, IC can and will prove reliance without disclosing the content of its privileged communications with its attorneys.[14]

All G&B offer in support of their "at issue waiver" claim is unfounded and implausible speculation that IC's privileged communications might provide some indirect evidence that IC would have paid G&B and their clients hundreds of thousands of dollars to settle their claims even if G&B and their clients had disclosed the facts that barred those claims under the statute of limitations.  G&B cannot prevail on their privilege waiver claims without advocating what amounts to a *per se* rule that fraud plaintiffs must disclose the content of all privileged communications with any attorneys who provided any advice relating to the transaction at issue. *See* MTD Mem. at 4.  That is not, and should not be, the law.

### III. G&B's Motion Is Full Of Unsupported, Inaccurate And Misleading Factual Claims

A further reason for denying G&B's motion, and for sanctioning them,[15] is that their motion papers provide a highly selective and misleading account of the facts:

1) On pages 2-3 of the MTD Mem., G&B claim that the *Eakins* settlement protocol "provided that Illinois Central receive authorizations to acquire any and all information which they desired with respect to Messrs. Harried and Turner, including medical, social security, railroad retirement board and other records."  G&B fail to acknowledge what the parties

---

[14] Attachment #1 to *Harried* D.E. 157 (IC's Resp. to G&B's 2nd MSJ).

[15] Yet another reason for sanctioning them is their violation of the agreed protective order.  *See Harried* D.E. 205 (IC's Motion to Strike).

12

recognized when they agreed to the settlement protocol:[16] that such records could not provide "any and all" material information. The settlement protocol was expressly designed to enable IC to identify prior claims that could give rise to statute of limitations or other defenses.[17] In order to do so, and to provide IC with other material information about *Eakins* plaintiffs that would be more readily accessible to themselves than to IC, the protocol required plaintiffs to respond to IC's questions under oath. Nothing in the Settlement Protocol they signed supports G&B's apparent notion that IC was required to disregard these sworn statements and instead rely on records secured through authorizations that provided only part of the material information needed to enable IC to evaluate the claims.

2) On page 3 of the MTD Mem., G&B claim that IC paid MMI "'several million dollars' for this purpose," the apparent antecedent of which is the obtaining of information "with respect to Messrs. Harried and Turner." IC did pay MMI several million dollars, but as G&B know from Mr. Murphy's testimony (which they selectively quote), that payment, over many years (including years after Harried and Turner's claims were settled), covered work spanning the whole 176-plaintiff *Eakins* case and also various other matters. *See Harried* D.E. 157 (IC's Resp. to G&B's 2nd MSJ), Ex. 1 (excerpts from J. Murphy dep.). MMI did no work on Turner's claim in the context of the *Eakins* case and settlement, because, as G&B know, Turner's claim was settled in 2002, before MMI was retained in mid-2003. MMI's work on Harried's claim represented a small portion of MMI's overall *Eakins* work and fees, *see Harried* D.E. 157 (IC's

---

[16] G&B refer to the *Eakins* settlement protocol as a "settlement process created by Illinois Central." *Id.* at 4. More accurately, it was a binding agreement negotiated and entered into at arms' length between sophisticated parties – IC and attorneys G&B – pursuant to which G&B have collected many millions of dollars.

[17] *See Harried* D.E. 49 (Am. Compl.) Ex. C; *Turner* D.E. 20 (Am. Compl.) Ex. E (Aug. 6, 2002 Settlement Protocol) at 4 (listing prior release and statute of limitations among defenses that would preclude settlement and providing that IC and G&B "agree that an Eakins plaintiff's case will not be considered 'settled' until such time as the information and documentation required by [IC]" is submitted and the settlement confirmed in writing); *Harried* D.E. 157 (IC's Resp. to G&B's 2nd MSJ), Attachment #1 (Garrett Decl. ¶ 10).

Resp. to G&B's 2nd MSJ), Attachment #1(Garrett Decl. ¶ 18), and is fully documented by the redacted MMI invoices IC produced to G&B a year ago.

    3)    In footnote 3 on page 5 of the MTD Mem., G&B assert that "[d]iscovery has now disclosed that it was Dr. McArthur who in fact diagnosed Messrs. Turner and Harried with the condition of asbestosis," and they emphasize that Dr. McArthur was disclosed to IC. What G&B omit is that the relevant diagnoses for statute of limitations purposes in the *Eakins* case were the 1994 and 1995 diagnoses that led to Harried and Turner's 1995 *Cosey* claims – not Dr. McArthur's 1999 diagnoses. G&B and their then-clients, now-co-defendants, Harried and Turner, *failed to disclose* the diagnoses or identify the diagnosing doctors from 1994 and 1995.

    4)    In footnote 4 on page 6 of the MTD Mem., G&B contend that Turner was scheduled for deposition and "inexplicably not deposed." *See also id*. at 9 n. 6 ("These defendants are entitled to know why Illinois Central did not depose Warren Turner."). But G&B already know why Turner was not deposed. IC scheduled his deposition in July 2002, and *G&B failed to produce him* as scheduled. Subsequently, the need to re-schedule his deposition was mooted when the *Eakins* litigation as a whole shifted from trial preparation mode to settlement mode.

    5)    Ignoring the Court's findings in its recent order denying summary judgment, G&B claim that it is "inescapable" that IC reviewed "all known information . . . [i]nclud[ing]" a 1-page federal court docket sheet disclosing that Harried "was in fact a *Cosey* plaintiff." MTD Mem. at 8. As the Court found, *Harried* D.E. 203, at 7-8, 10-11, Mr. Garrett's declaration provides competent and uncontroverted evidence that that information did not reach IC until long after it had paid Harried and G&B.[18]

---

[18] G&B also omit the fact that the docket sheet would only have disclosed Harried's participation as a plaintiff in *federal* court in *1999* – which, alone, would not have given rise to a statute of limitations defense – not his

14

## CONCLUSION

G&B's MTD is frivolous, and their motion papers are misleading. The motion should be denied, and G&B should be ordered to pay the costs and fees incurred by IC in responding both to it and to G&B's derivative, and equally frivolous, motion in limine.

Respectfully submitted,

s//Tanya D. Ellis_____
DANIEL J. MULHOLLAND (MSB# 3643)
TANYA D. ELLIS (MSB#101525)

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
Attorneys for Plaintiff Illinois Central Railroad Company
200 South Lamar Street
City Centre Building, Suite 100 (39201)
Post Office Box 22608 (39225-2608)
Jackson, Mississippi
Telephone: (601) 960-8600
Facsimile: (601) 960-8613
mulhollandd@fpwk.com
ellistd@fpwk.com

HARKINS CUNNINGHAM LLP
1700 K Street, N.W., Suite 400
Washington, DC 20006-3817
Telephone: (202) 973-7600
Facsimile: (202) 973-7610

---

participation in *state* court proceedings, for which the docket was not searchable online, in *1995*. *See Harried* D.E. 205 (MTD), Ex. 3 (PACER docket sheet).

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2010, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record including the following:

    John G. Corlew, Esq.
    Kathy K. Smith, Esq.
    Attorneys for Defendants William Guy and Thomas Brock
    Corlew Munford & Smith PLLC
    4450 Old Canton Road, Suite 111 (39211-5990)
    Post Office Box 16807 (39236)
    Jackson, Mississippi
    jcorlew@cmslawyers.com
    ksmith@cmslawyers.com

    Wayne Dowdy, Esq.
    Dowdy & Cockerham
    Attorneys for Defendants Willie Harried and Warren R. Turner, Jr.
    Post Office Box 30
    Magnolia, MS 39652
    waynedowdy@waynedowdy.com

                                  s//Tanya D. Ellis