```
            UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    WESTERN DIVISION
```

ILLINOIS CENTRAL RAILROAD COMPANY                        PLAINTIFF

VERSUS                          CIVIL ACTION NO. 5:06cv160-DCB-JMR

WILLIE R. HARRIED, a/k/a WILLIAM ROY
HARRIED, ET AL.                                         DEFENDANTS

## OPINION AND ORDER

This matter comes before the Court on Defendants William S. Guy and Thomas W. Brock's Motions for Judgment as a Matter of law [docket entry no. 271] and for a New Trial [docket entry no. 273]. Having carefully considered said motions in light of applicable law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

## BACKGROUND

The Court has summarized the facts underlying this action numerous times (for example, in its Orders of January 10, 2008 and August 6, 2009) and will not repeat those facts again here. After extensive pre-trial briefing, the Court held a jury trial on Illinois Central Railroad Company's claims against Willie R. Harried, Warren Turner, Jr., Guy, and Brock. Those claims arose out of earlier settlements of asbestos-related claims by Harried and Turner against Illinois Central in a Mississippi state court case known as Eakins for which Guy and Brock (both attorneys) represented Harried and Turner. The jury returned a verdict on

March 11, 2010 against Guy and Brock for Illinois Central's claims of fraud and breach of the duty of good faith and fair dealing. The jury found for Harried and Turner with respect to Illinois Central's claims against them. The jury awarded Illinois Central $210,000.00 in compensatory damages ($90,000.00 with respect to Harried's settlement and $120,000.00 with respect to Turner's settlement) and $210,000 in punitive damages. Defendants Guy and Brock now move for judgment as a matter of law with respect to the jury's verdict, renewing their motion under Fed. R. Civ. P. 50. Guy and Brock also move for a new trial.

**A.   Motion for Judgment as a Matter of Law**

Guy and Brock contend that there was not sufficient evidence for the jury to find that they fraudulently concealed their conduct from Illinois Central such that the 3-year statute of limitations was tolled or to find that Illinois Central was entitled to punitive damages. Guy and Brock further argue, for the first time, that the jury's verdict is an impermissible collateral attack on related state court proceedings and that Illinois Central should have been required to rescind their settlement agreements with Harried and Turner before proceeding with claims against Guy and Brock. Lastly, Guy and Brock contend generally that there was not sufficient evidence to support the verdict.

Judgment as a matter of law is only appropriate when "a party has been fully heard on an issue during a jury trial and the court

finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). When addressing a Rule 50 motion, "the court must review all of the evidence from the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." East Texas Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co., 575 F.3d 520, 525 (5th Cir. 2009). The court must "consider all the evidence presented at trial in the light most favorable to the nonmoving party" and "should disregard all evidence favorable to the moving party that the jury is not required to believe." Id. "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper." Boeing v. Shipman, 411 F.2d at 374-75 (5th Cir. 1969), overruled on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (1997).

>    1.   *The Evidence Was Sufficient for the Jury to Find that Illinois Central's Claims Were Timely.*

Defendants Guy and Brock contend that there is not a sufficient evidentiary basis for the jury to have found that the claims against them are timely. Because Illinois Central filed suit against Guy and Brock on January 17, 2008 with respect to Harried's Eakins settlement and on February 4, 2008 with respect to Turner's Eakins settlement, the Court instructed the jury that it

3

should find the claims time barred if Illinois Central knew, or by the exercise of reasonable diligence should have discovered its injury prior to January 17, 2005 and February 4, 2005, respectively. The Court further instructed the jury that the statute of limitations could be tolled if Illinois Central could prove by a preponderance of the evidence that Guy and Brock committed an affirmative act to conceal the underlying tortious conduct and that Illinois Central failed to discover the factual basis for the claims despite the exercise of due diligence.

Guy and Brock contend that Illinois Central knew of its injuries with respect to both settlements no later than February 13, 2004 and thus that Illinois Central's claims against them are time barred unless it proved the elements of fraudulent concealment. To allege fraudulent concealment of a claim, a plaintiff must show: "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." Whitaker v. Limeco Corp., 32 So.3d 429, 436 (Miss. 2010) (citations omitted). Illinois Central put forth sufficient evidence of both affirmative concealment by Guy and Brock and Illinois Central's own due diligence such that the jury could reasonably have found that the statute of limitations was tolled.

First, Mississippi law requires that the affirmative act of concealment for fraudulent concealment occur *subsequent to* the

4

initial fraud.  Id. at 436-37.  Illinois Central presented evidence that Guy and Brock affirmatively acted to conceal the fact that Turner and Harried had failed to disclose their involvement in pre-Eakins asbestos-related litigation subsequent to the February 13, 2004 date on which Guy and Brock contend Illinois Central should have known of its injuries.  That evidence included, *inter alia*, a letter from Guy and Brock to Illinois Central on April 24, 2004 assuring Illinois Central that they had been thorough and accurate in collecting information about Eakins plaintiffs; repeated assurances that problems with Eakins plaintiff Fred Tyler's interrogatory responses were simply a mistake; and Guy and Brock's refusal to permit Illinois Central to complete a deposition of Tyler which might have revealed Guy and Brock's previous misstatements.  Though Guy and Brock dispute the significance of this evidence, viewing the verdict in the light most favorable to Illinois Central, it was sufficient for the jury to find that Guy and Brock committed affirmative subsequent acts to conceal their earlier fraud.

Second, Guy and Brock dispute that Illinois Central submitted sufficient evidence that it acted with due diligence to discover its fraud claims against Guy and Brock.  Guy and Brock primarily argue that Illinois Central was not diligent because it was suspicious, as early as January 2004, that Tyler had not been forthcoming about pre-Eakins involvement in asbestos litigation,

5

and that suspicion should have led Illinois Central to discover Guy and Brock's involvement in the misstatements surrounding the Turner and Harried settlements.  Illinois Central counters that though it was aware in January 2004 about the Tyler issue and by February 2004 that Harried and Turner had failed to disclose their involvement in the pre-<u>Eakins</u> litigation, it was not aware until the depositions of Harried and Turner in this litigation that Guy and Brock were also culpable.  To this end, Illinois Central presented evidence to the jury that it acted with due diligence to discover its claims with respect to the Harried and Turner settlements, including by requiring Guy and Brock to give detailed explanations of the procedures they had used to gather information from <u>Eakins</u> plaintiffs in March 2004 and seeking to depose Fred Tyler in the <u>Eakins</u> case.  Moreover, Illinois Central timely asserted claims against Harried and Turner once it learned of their pre-<u>Eakins</u> involvement in asbestos-related litigation.

   The evidence presented was sufficient for the jury to have determined that Illinois Central acted with due diligence.  Guy and Brock argue that because Illinois Central did not discover Guy and Brock's culpability in the Harried and Turner fraud as soon as it learned of the Harried and Turner fraud, Illinois Central was not sufficiently diligent.  To the contrary, one can act diligently to uncover fraud and yet fail in that endeavor.  The mere fact that Illinois Central did not discover Guy and Brock's involvement in

the fraud earlier does not indicate that Illinois Central was not diligent. On the evidence presented, the jury found that Illinois Central acted with due diligence and the Court will not disturb that finding.

  2.  *The Evidence Was Sufficient for the Jury to Have Awarded Punitive Damages to Illinois Central.*

  Guy and Brock next contend that there was insufficient evidence for the jury to find that Illinois Central was entitled to punitive damages. Under Mississippi law, punitive damages may not be awarded unless the plaintiff proves by clear and convincing evidence "that the defendant ... acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or *committed actual fraud*." Miss Code. Ann. § 11-1-65 (emphasis added). Moreover, punitive damages are considered an extraordinary remedy and should be awarded where the "injuries [are] inflicted in the spirit of wanton disregard for the rights of others ... [In other words, there must be] some element of aggression of some coloring of insult, malice or gross negligence evincing a ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." <u>Warren v. Derivaux</u>, 996 So.2d 729, 738 (Miss. 2008) (quoting <u>Bradford v. Schwartz</u>, 936 So.2d 931, 936 (Miss. 2006)). Guy and Brock contend that Illinois Central was required to present evidence of both malice and fraud in order for the jury to award punitive damages but that is clearly incorrect. Under a plain reading of the § 11-

7

1-65, either actual fraud *or* malice is required but not both.

Guy and Brock further argue that the fraud proved by Illinois Central was not extraordinary enough to warrant punitive damages, citing <u>Gardner v. Jones</u>, 464 So.2d 1144 (Miss. 1985) and <u>Watson v. First Commonwealth Life Ins. Co.</u>, 686 F.Supp. 153 (S.D. Miss. 1985). The Court disagrees and holds that Illinois Central presented sufficient evidence for the jury to find that Guy and Brock's fraud was wanton and aggressive enough to take this case "out of the ordinary rule." <u>Warren</u>, 996 So.2d at 738. Illinois Central presented evidence that Guy and Brock, both attorneys and officers of the Court, falsified documents, destroyed evidence, and lied to their clients and a court of law. Though Guy and Brock point to their trial testimony in which they state that they did *not* lie or falsify documents, Illinois Central presented sufficient evidence for the jury to disbelieve Guy and Brock's testimony. The Court will not disturb the jury's finding that Illinois Central was entitled to punitive damages.

>    3.  *Neither Rule 60(b) Nor the Rooker-Feldman Doctrine Deprives the Court of Subject Matter Jurisdiction Over Illinois Central's Claims.*

Guy and Brock next argue, for the first time during the long history of this litigation, that Illinois Central's claims against them collaterally attack the <u>Eakins</u> court's dismissal of Harried's and Turner's Mississippi state law claims against Illinois Central pursuant to a settlement agreement. Therefore, Guy and Brock

assert that the Court should either decline to decide these claims or has no jurisdiction to do so under the Rooker-Feldman doctrine.

With regard to the former, Guy and Brock contend that Illinois Central's claims are an "independent action" to obtain relief from the Eakins court's dismissal which, under Mississippi Rule of Civil Procedure 60(b), should be brought in the same court which rendered the judgment (here, Mississippi state court). Guy and Brock find support for their argument in the discussion of the analogous federal Rule 60(b) in Wright & Miller's treatise on federal procedure wherein the authors note that "[t]he normal procedure to attack a judgment should be by motion in the court that rendered the judgment." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2868 (2d ed. 2002). While that may be the "normal" practice, the authors also note two sentences before the one cited by Guy and Brock that "the action may be brought in any court of competent jurisdiction." Id. Guy and Brock have cited no case suggesting that an independent action for relief from a judgment based on fraud, such as the one that Illinois Central asserted here, cannot be heard in a court other than the one which issued the original judgment. Accordingly, neither Mississippi Rule 60 nor the analogous federal rule compel the finding that Guy and Brock's choice of forum is incorrect.

Guy and Brock additionally argue that the Court is precluded from exercising jurisdiction over Illinois Central's claims

9

pursuant to the Rooker-Feldman doctrine which holds that a district court has no jurisdiction to review final determinations of a state court.  E.g., Gauthier v. Continenal Diving Servs., Inc., 831 F.2d 559, 560 (5th Cir. 1987) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)).  Under established Fifth Circuit precedent, however, "the federal court is not required to give greater deference to a state court judgment than a court of the state in which the judgment was rendered would give it."  Id. at 561 (holding the district court had jurisdiction to review a state court consent judgment enforcing a settlement between an injured employee and his employer).  Put another way, the Rooker-Feldman doctrine "does not bar an action in federal court when that same action would be allowed in the state court of the rendering state." Davis v. Bayless, 70 F.3d 367, 376 (5th Cir. 1995) (citing Gauthier, 831 F.2d at 559).  Here, there is no question that Illinois Central's action would be properly brought in Mississippi state court.  Indeed, Guy and Brock admit as much in arguing (incorrectly) that it could only be brought there.  Accordingly, the Rooker-Feldman doctrine does not deprive the Court of jurisdiction over Illinois Central's claim.

> 4. *Illinois Central Was Not Required to Rescind the Eakins Settlement Agreements In Order to Maintain This Action.*

Guy and Brock next argue, again for the first time, that Illinois Central cannot maintain an action for fraud with respect to Harried's and Turner's settlements because it should have first

repudiated the settlement agreements, citing <u>Bogy v. Ford Motor Co.</u>, 538 F.3d 352 (5th Cir. 2008) and <u>Turner v. Wakefield</u>, 481 So.2d 846 (Miss. 1985).  In <u>Turner</u>, the Mississippi Supreme Court restated the general rule that in actions for fraudulent inducement to enter into a contract, the defrauded party "has an election to either rescind, in which event he must tender back that which he has received, or affirm the agreement, and maintain his action in damages for deceit."  <u>Turner</u>, 481 So.2d  at 848 (quoting <u>Stoner v. Marshall</u>, 358 P.2d 1021 (Colo. 1961)).  In <u>Bogy</u>, the Fifth Circuit made an <u>Erie</u> guess as to whether the Mississippi Supreme Court would extend that holding to settlement agreements which had been procured on the basis of fraud and held that it would.  <u>Bogy</u>, 538 F.3d at 355 (holding plaintiff could bring action for fraudulent inducement of settlement agreement without first rescinding tender amounts received from settlement).  Rather than supporting Guy and Brock's position, <u>Bogy</u> confirms that Illinois Central was correct in its election not to rescind the <u>Eakins</u> settlement and instead to bring this action for damages.

    *5.  There was Sufficient Evidence to Support the Judgment.*

Guy and Brock next request "in the interest of completeness" that the judgment be set aside because there is no evidence to support the jury's findings of fraud or breach of the duty of good faith and fair dealing.  Guy and Brock do not cite to the trial transcript, the trial exhibits, or to any authority in support of

11

this vague argument. Accordingly, they have waived it. See Salazar-Regino v. Trominski, 415 F.3d 436, 452 (5th Cir. 2005) (holding that inadequately briefed issues are waived).

**B.   Motion for New Trial**

Guy and Brock assert the following grounds in their motion for new trial: (1) the jury's verdict against Guy and Brock was inconsistent with a verdict for Harried and Turner; (2) Illinois Central did not submit sufficient evidence that it relied on Guy and Brock in deciding to settle with Harried and Turner; (3) Guy and Brock were prevented from obtaining important discovery related to reliance until the eve of trial; (4) the Court erred in permitting evidence related to Guy and Brock's representation of Fred Tyler into evidence; (5) the Court erred in allowing the testimony of Tim Porter into evidence; (6) the Court erred in instructing the jury that it could find multiple contracts to which the duty of good faith and fair dealing applied; (7) the Court erred in refusing to instruct the jury that Illinois Central was required to mitigate damages; (8) the Court erred in allowing Illinois Central to amend its complaint to add Guy and Brock; and (9) several other evidentiary errors occurred at trial, the cumulative effect of which entitle Guy and Brock to a new trial.

Under Fed. R. Civ. P. 59, "[a] new trial may be granted to all or any of the parties and on all or part of the issues [] in an action in which there has been a trial by jury, for any of the

reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." "A new trial may be appropriate if the verdict is against the weight of the evidence, the amount awarded is excessive, or the trial was unfair or marred by prejudicial error." Scott v. Monsanto Co., 868 F.2d 786, 789 (5th Cir. 1989) (citing Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985)).  Although a judge faced with a motion under Rule 59 may not simply substitute his judgment for that of the jury, the Court need not view the evidence in the light most favorable to the verdict winner.  Instead, the judge has the latitude to reweigh the evidence and is free to accept or reject evidence and to reassess the credibility of witnesses and proof. Shows v. Jamison Bedding, Inc., 671 F.2d 927, 930 (5th Cir. 1982).

    *1.  "Inconsistent" Verdict.*

Guy and Brock contend that the jury could not credibly have found against Guy and Brock and for Harried and Turner and thus that the verdict against Guy and Brock must be against the weight of the evidence.  The Court disagrees.  The verdict against Guy and Brock is supported by substantial evidence, including testimony from both Harried and Turner that they informed Guy and Brock of their prior involvement in asbestos litigation and that, therefore, Guy and Brock knew that Harried's questionnaire and Turner's interrogatory answers were false.  Moreover, any perceived "inconsistency" in the jury's verdict for Harried and Turner but

13

against Guy and Brock is not justification for a new trial. As Illinois Central points out in its Opposition, the jury could have found that Illinois Central presented clear and convincing evidence of fraud as to Guy and Brock but only preponderant evidence as to Harried and Turner.

   2.   *Reliance.*

Guy and Brock assert that Illinois Central did not present sufficient evidence that it relied on any statements from Guy and Brock in entering into settlement agreements with Harried and Turner.  Specifically, Guy and Brock contend that Illinois Central's "only decision-maker" with respect to settlement was Laird Pitts who did not testify regarding reliance.  To the contrary, Illinois Central introduced two witnesses, its risk manager Charles Garrett, and an outside lawyer, Thomas Peters, who each testified he was involved, along with Pitts, in the decisions to settle the Harried and Turner claims.  Both Garrett and Peters testified that they would not have recommended to Pitts that Illinois Central settle the claims had Turner's interrogatory answers and Harried's questionnaire truthfully revealed their involvement in pre-<u>Eakins</u> asbestos litigation.  The jury's verdict that Illinois Central relied on statements by Guy and Brock was not against the weight of the evidence.

   3.   *Discovery Issues.*

Guy and Brock next contend that Illinois Central either failed

to respond to discovery requests related to the issue of reliance or complied on the eve of trial such that Guy and Brock did not have sufficient time to review the produced materials before trial. To the extent that Guy and Brock contend they were harmed by the timing of Illinois Central's production of relevant documents, Guy and Brock do not state which relevant documents they had insufficient time to review or how earlier possession of those documents might have influenced the trial.  They have not shown that the timing of discovery rendered the trial unfair or marred by prejudicial error.  With respect to Guy and Brock's contention that Illinois Central failed to comply with discovery requests because it did not produce billing records from the Harkins Cunningham firm, Fletcher Sippel, Janet Gilbert, Glenn Beckham, and the Upshaw Williams firm, the Court ruled in its February 22, 2010 Order that those records were not responsive to discovery requests because those attorneys did not work on Harried's and Turner's claims prior to settlement.  This discovery issue does not entitle Guy and Brock to a new trial.

    4.   *Trial Testimony of Fred Tyler.*

Guy and Brock next contend that they are entitled to a new trial because the Court admitted the testimony of Fred Tyler at trial.  As the Court noted in its February 2, 2010 Order, the Mississippi Supreme Court has held that in a fraud case, "[e]vidence of similar occurrences is relevant and admissible to

15

show absence of mistake or accident, plan or intent." <u>H.L. Dawkins v. Redd Pest Control, Inc.</u>, 607 So.2d 1232, 1236 (Miss. 1992) (citing Miss. R. Evid. 404(b)). Fred Tyler's testimony was therefore relevant and the jury was permitted to consider it under Fed. R. Civ. P. 404(b). Guy and Brock's argument for a new trial on this evidentiary issue is meritless.

    5.   *Trial Testimony of Tim Porter.*

Guy and Brock next argue that the Court's admission of testimony from Tim Porter justifies a new trial because it served to mislead and confuse the jury, was not relevant, and did not meet the requirements of Fed. R. Evid. 404. Guy and Brock do not indicate which specific portions of Porter's testimony they object to or why it was misleading or confusing. Accordingly, the Court denies their motion for new trial on this issue.

    6.   *Jury Instructions With Regard to the Duty of Good Faith and Fair Dealing.*

Guy and Brock next contend that the Court erred in its Jury Instruction No. 4 because the evidence reflects there was only one agreement to which Guy and Brock were a party with Illinois Central - the August 6, 2002, letter agreement which related only to the Harried settlement. According to Guy and Brock, because there was no contract with respect to the Turner settlement, there could be no breach of the duty of good faith and fair dealing with respect to it.

In Jury Instruction No. 4, the Court instructed the jury to

determine whether a contract existed before determining whether Guy and Brock were liable for breach of the duty of good faith and fair dealing. The jury found that there was a valid contract as to both the Harried and Turner settlements. Guy and Brock dispute this finding because Canadian National did not approve the Turner settlement until after the August 6, 2002 letter agreement and thus they argue there was no valid contract with respect to the Turner settlement. Illinois Central, however, introduced evidence that the August 6, 2002 letter expressly provided for the settlement of Turner's claims and that Turner was paid pursuant to that settlement contract. The jury's verdict with respect to the duty of good faith and fair dealing as to Turner's settlement was not against the weight of the evidence.

    7.   *Mitigation of Damages.*

Guy and Brock next contend that the Court erred in refusing to instruct the jury that Illinois Central should have "mitigated damages" by seeking in Mississippi state court to set aside the <u>Eakins</u> settlement pursuant to Miss. R. Civ. P. 60. As discussed in part A.3 above, Illinois Central was within its rights to assert this claim for fraud against Guy and Brock without seeking to amend the judgment in <u>Eakins</u> and the Court's refusal to instruct the jury as requested did not adversely affect the verdict.

    8.   *Amendment of Complaint to Add Guy and Brock.*

Guy and Brock next argue they are entitled to a new trial

17

because Illinois Central should not have been permitted to amend its complaint to add them as defendants for the claims already pending against Harried and Turner. Guy and Brock contend this resulted in "fundamental unfairness which allowed the jury to infer that Guy and Brock must have done something wrong." To the contrary, for the reasons stated in the Court's January 10, 2008 Order, the joinder of Guy and Brock was proper under Fed. R. Civ. P. 16(b) and 15(a). Guy and Brock have not shown that their joinder rendered the verdict unfair or marred by prejudicial error.

   9.   *Various Evidentiary Issues.*

Lastly, Guy and Brock contend that the cumulative effect of various testimony and comments from the Court during trial prohibited them from receiving a fair trial. The issues about which they complain are: (1) a comment by the Court that a certain lawyer mentioned by a witness is now in the penitentiary; (2) that Illinois Central's attorney stated to Defendant Guy that "Judge Bramlette could send us home any time he wanted to;" (3) that Illinois Central's attorney suggested that Defendant Guy "get his checkbook out" after Guy testified that he would have refunded Illinois Central's money for the Harried and Turner settlements if he had known that they were included in the pre-Eakins case; (4) that Illinois Central was allowed to argue that a questionnaire was missing from the Guy and Brock file which Illinois Central had requested in discovery. On balance, the Court does not find that

any of these evidentiary issues rendered the verdict unfair or marred by prejudicial error.  Indeed, with respect to the first issue listed above, the Court instructed the jury to disregard any comments from the bench to the lawyers and to disregard references to other cases in Mississippi state court.  Further, with respect to the third issue listed above, the Defendants successfully objected to Illinois Central's line of questioning.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment as a Matter of Law [docket entry no. 271] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for a New Trial [docket entry no. 273] is **DENIED.**

**SO ORDERED** this the 3rd day of November 2010.

                                 s/ David Bramlette

                                 **UNITED STATES DISTRICT COURT**