**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**


ILLINOIS CENTRAL RAILROAD COMPANY                    PLAINTIFF


VERSUS                              CIVIL ACTION NO. 5:06cv160-DCB-JMR


WILLIE R. HARRIED, a/k/a WILLIAM ROY
HARRIED, ET AL.                                      DEFENDANTS

<u>**OPINION AND ORDER**</u>

This matter comes before the Court on Plaintiff Illinois Central Railroad Company's Motion for Attorneys' Fees [docket no. 259] and Supplemental Motion for Attorneys' Fees and Costs [docket no. 307] and Defendants William S. Guy and Thomas W. Brock's Motion for Review of Bill of Costs [docket entry no. 285].  Having carefully considered said motions in light of applicable law, and being otherwise fully advised in the premises, the Court finds and orders as follows.

This Court has summarized the facts underlying this diversity action numerous times (for example, in its Orders of January 10, 2008 and August 6, 2009) and will not repeat those facts in detail again here.  After extensive pre-trial briefing, a jury trial was held on Illinois Central's claims against Willie R. Harried, Warren Turner, Jr., Guy, and Brock.  Those claims arose out of earlier settlements of claims by Harried and Turner against Illinois Central for which Guy and Brock, both attorneys, represented Harried and Turner.  The jury returned a verdict on March 11, 2010,

against Guy and Brock on Illinois Central's claims of fraud and breach of the duty of good faith and fair dealing.  The jury found for Harried and Turner with respect to the claims against them. The jury awarded Illinois Central $210,000.00 in compensatory damages ($90,000.00 with respect to Harried's settlement and $120,000.00 with respect to Turner's settlement) and $210,000 in punitive damages.  Illinois Central now seeks attorneys' fees, costs, and post-judgment interest.  Guy and Brock oppose the amounts sought for attorneys' fees and costs but do not oppose with respect to post-judgment interest.

## I.   Costs

Illinois Central seeks to recover $58,506.40 in costs. Because this is a diversity action, this Court must apply Mississippi substantive law and federal procedural law.  Carter v. General Motors Corp., 983 F.2d 40, 43 (5th Cir. 1993).  The award of costs is a procedural issue and thus federal law applies.  Id. at 43-44.  Federal Rule of Civil Procedure 54(d) provides that costs other than attorneys' fees should be allowed to the prevailing party in an action unless the court otherwise directs. While courts are given wide latitude in determining taxable costs, this discretion is limited to the costs specifically enumerated in 28 U.S.C. § 1920.  Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987).  Guy and Brock do not dispute the general proposition that the prevailing party is entitled to recover costs

but dispute the amounts of certain costs sought by Illinois Central.  As will be explained in more detail below, the Court awards Illinois Central $20,661.48 in costs.

**A.  Fees of the Clerk**

Illinois Central seeks $700.00 in costs associated with filing fees.  Guy and Brock do not dispute these costs and thus the Court awards Illinois Central $700.00 for filing fees.

**B.  Fees for Service of Summonses and Subpoenas.**

Illinois Central seeks $1,748.09 for service of summonses and subpoenas.[1]  Illinois Central used private process servers for its summonses and subpoenas and Guy and Brock contend that it is therefore not entitled to recover any fees for service because only fees paid to a U.S. marshal are recoverable.  Halliburton Energy Servs., Inc. v. M-I, LLC, 244 F.R.D. 369, 371 (E.D. Tex. 2007) (holding that "[p]rivate process server fees are not recoverable fees of the clerk and marshal under § 1920.") (citing Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245 (5th Cir. 1997)).  Though that was the accepted rule, the Fifth Circuit has suggested, in dicta, that fees for private process servers could now be awarded under § 1920.  Gaddis v. U.S., 381 F.3d 444, 455-56 (5th Cir. 2004) (holding guardian ad litem fees are taxable costs under § 1920).  The Gaddis Court stated that "[f]ees of the clerk

---

[1]Illinois Central originally sought $1,959.59 but later reduced its request.

and marshal has been interpreted by the Ninth Circuit to include private process servers' fees as taxable costs because the service of summonses and subpoenas is now done almost exclusively by private parties employed for that purpose, not by the U.S. Marshal, even though there is no express provision authorizing the payment of private process servers in § 1920." Id. (citing Aflex Corp. v. Underwriters Labs., Inc. 914 F.2d 175, 178 (9th Cir. 1990)).

Following Gaddis, district courts in the Fifth Circuit have in recent years begun to award costs for private process servers, though some have limited those costs to the amount charged for service by the U.S. Marshal. E.g., Sunbelt Machine Works Corp. v. All Amer. CNC Sales, Inc., 2009 WL 2761670 (S.D. Tex. Aug. 26, 2009) (awarding private process server fees as taxable costs, without limit); Denner v. Texas Dep't of Crim. Justice, 2007 WL 294191 (W.D. Tex. Jan. 29, 2007) (awarding private process server fees as taxable costs, limited to the fee charged for service by the U.S. Marshal); Nilesh Enterprises, Inc. v. Lawyers Title Ins. Corp., 2010 WL 2671728 (W.D. Tex. July 1, 2010) (same). This Court has not found other district courts in the Southern District of Mississippi which have addressed this issue.

Based on the Fifth Circuit's dicta in Gaddis and on what appears to be an emerging trend in this circuit's district courts, this Court will award private process server fees to Illinois Central, limited to the amount charged for service by the U.S.

4

Marshal which is currently $55.00.

Guy and Brock further challenge costs for service of summonses or subpoenas that occurred before they were added as defendants in the case against Harried and Turner. Guy and Brock cite no authority for the proposition that costs incurred before they were added as defendants are not taxable to them. This Court has broad discretion in taxing costs. S&D Trading academy, LLC v. AAFIS Inc., 336 Fed.Appx. 443, 450 (5th Cir. 2009). In this instance, the fact that Guy and Brock were not initially parties to the litigation does not relieve them of the obligation to pay costs related to the early part of the litigation, because the claims against them share a common core of facts with those initially brought against Harried and Turner. See Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 327 (5th Cir. 1995) (holding attorneys' fees for entire case could be awarded against one defendant where claims shared common core of facts with claims against multiple defendants). Guy and Brock were not added as parties initially only because Illinois Central was not aware of Guy and Brock's culpability in their clients' fraud. Once Illinois Central learned of Guy and Brock's involvement through discovery, it added Guy and Brock as defendants. Under the circumstances of this case, Guy and Brock cannot avoid costs incurred prior to their being added as parties in the case.

Guy and Brock also object to costs for service of various

subpoenas as unnecessary because they assert that the witness would have accepted service or because the witness resided outside the subpoena power of the Court.  The Court finds these objection to be without merit.

Accordingly, the Court awards Illinois Central $806.62 in costs for service of process.  That amount is comprised of: (1) service for eleven subpoenas or summonses for which Illinois Central paid more than $55 but for which costs are capped at that amount; (2) service for five subpoenas or summonses for which Illinois Central paid less than $55 and for which this Court awards the full amount that Illinois Central paid; and (3) one $160 fee for service of subpoenas on at least four trial witnesses and for which this Court awards the full amount requested because it is less than $55 per subpoena.  This Court notes that Illinois Central withdrew its request for fees related to the service of three subpoenas initially included in its bill of costs, all served on April 1, 2009.

### C. Transcript Fees

Illinois Central seeks $15,359.83 for transcript fees associated with the taking of depositions in this action.  Guy and Brock object to $5,771.65 of those fees because (1) they were incurred before Guy and Brock were added as defendants in the case; (2) costs for videotaping depositions are not recoverable; and (3) costs for expedited transcripts are not recoverable except with

prior court approval.  For the reasons discussed in part B, above, this Court overrules any objections to fees that were incurred before Guy and Brock were parties to the case.

With respect to fees incurred in videotaping depositions, Guy and Brock are correct that the rule in the Fifth Circuit had been to disallow such costs as not taxable under § 1920.  E.g., Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir. 1993).  However, § 1920(2) was amended in October 2008 and now permits "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" to be taxed as costs.  The Fifth Circuit has interpreted that to mean that videotaped depositions "necessarily obtained for use in the case" can be taxed as costs.  S&D Trading Academy, LLC v. AAFIS Inc., 336 Fed.Appx 443 (5th Cir. 2009).  Guy and Brock argue that permitting the costs of videotaped depositions to be taxed here amounts to an impermissible retroactive application of the revised § 1920 because the depositions at issue took place before the amendment of the statute.  To the contrary, "because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." Landgraf v. USI Film Prods., 511 U.S. 244, 275 (1994).  Accordingly, this Court will apply the law currently in effect – the revised § 1920(2) – to Illinois Central's request.  S&D Trading, 336 Fed.Appx. at 452 (refusing to reverse

denial of costs for videotaping depositions because district court had correctly applied law in effect at the time of costs decision which was the previous version of § 1920(2)).  Illinois Central argues that the costs for videotaping Harried's and Turner's depositions were necessary for trial because they were both in poor health and given the import of their testimony, Illinois Central reasonably required videotapes of the depositions in the event that either of them could not appear at trial.  This Court is persuaded that under these circumstances, videotaping the depositions of the two key witnesses for trial was reasonably necessary and thus awards the costs for videotaping them to Illinois Central.

Guy and Brock lastly object to Illinois Central's request for fees for expedited deposition transcripts for witnesses Fred Tyler and Janice Guy.  Costs for obtaining expedited transcripts are not typically taxable unless prior court approval has been obtained or the special character of the litigation necessitates an expedited transcript. Fogelman v. ARAMCO, 920 F.2d 278, 286 (5th Cir. 1991). Illinois Central contends that the circumstances warranted expedited transcripts for Tyler and Janice Guy because the discovery deadline was looming and at the time of those depositions, the trial was scheduled to take place within approximately six months.  This Court disagrees that the normal time pressures of impending trial and discovery deadlines necessitated expedited transcripts here and thus disallows these

costs.  The Court cannot determine from the invoices submitted by Illinois Central which portion of the fees charged for the Tyler and Janice Guy depositions were for expediting.  After review of the other transcript fees, the Court will award Illinois Central 65% of the costs incurred for the transcripts of the Tyler and Janice Guy depositions.  See id. (holding, where it was not necessary for the transcript to be obtained on an expedited basis, then the district court should reduce the taxable costs to whatever the charge would have been on a non-expedited basis).

The Court therefore awards Illinois Central all of its requested costs for transcript fees, except that the fees for the Tyler and Jancice Guy depositions are reduced to 65% of what was requested.  The total amount awarded for transcript fees is $14,645.16.

**D.  Witness Fees**

Illinois central seeks $898.50 in costs associated with witness fees.  Guy and Brock object to being taxed for the $110.00 in witness fees paid Janice Guy because, though she was subpoenaed by Illinois Central, she did not testify at trial.  "The presumption is, absen[t] some reasonable explanation, that when a witness is subpoenaed to the trial, but is not called to the witness stand, he is not a necessary witness."  Mississippi Chem. Corp. v. Dresser-Rand Co., 2000 WL 33725123, *15 (S.D. Miss. Sept. 12, 2000) (citing Pate v. General Motors Corp., 89 F.R.D. 342, 344

(N.D. Miss. 1981)).  Illinois Central contends that Janice Guy was necessary in the event that Guy or Brock's testimony deviated from their deposition testimony but because they reiterated their deposition testimony, Janice Guy became unnecessary.  See Card v. State Farm Fire and Cas. Co., 126 F.R.D. 658, 661 (N.D. Miss. 1989) (awarding witness fees for witness who did not testify at trial because testimony "became unnecessary").  This Court holds that Illinois Central's explanation that they subpoenaed Janice Guy simply as a precaution does not rebut the presumption that her witness fees should not be taxed because she was not called at trial.  Accordingly, this Court awards Illinois Central the requested witness fees minus the $110.00 paid to Janice Guy. Illinois Central is therefore awarded $788.50.

### E.  Copy Costs

Illinois Central seeks to recover $15,950.69 in copying costs incurred throughout the course of this multi-year litigation.  In support of these costs, Illinois Central submitted an eleven page chart which lists a copying charge incurred on a certain date or date range and a corresponding description.  For example, for the period September 9 through 30, 2008, Illinois Central lists a charge of $150.90 supported by a description "documents produced during discovery supplementing Illinois Central's responses and responsive documents to Guy and Brock's requests for production." [docket no. 285-6 at 2].  Illinois Central states that it

10

calculated copying costs at $.10 per page, but does not list the number of pages that corresponds to each entry, only the total copying cost.   Illinois Central created the submitted chart by reviewing its law firm's monthly invoices which contained a contemporaneous description of work performed by attorneys and paralegals and, separately, monthly copying charges. Guy and Brock object vehemently to Illinois Central's request for reimbursement for copying, arguing that because it did not keep a contemporaneous log of documents copied, its copy log is "created" and contains "utter speculation."

Reproduction of documents "necessarily obtained for use in the case are included within taxable costs provided that the prevailing party demonstrates that necessity."   Fogleman, 920 F.2d at 286. Prevailing parties are not expected to "identify every xerox copy made for use in the course of legal proceedings, but copies "obtained simply for the convenience of counsel" are not taxable and the losing party "should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines." Id.

While Illinois Central undoubtedly incurred significant copying expenses throughout the course of this litigation, it is impossible to determine from the chart it provided to the Court which copying costs were "necessarily obtained for use in the case"

and which were "obtained simply for the convenience of counsel."
The chart lists, for example, a $595.10 copying charge for the
month of November 2008 with eighteen separate entries supporting
that charge.  From the descriptions, the copies that make up that
$595.10 charge range from obviously necessary for use in the case
(e.g., supplemental document production) to likely for the
convenience of counsel (e.g., appendix of all Illinois Central
documents in preparation for responding to defendants' second set
of discovery requests).  The chart does not detail what portion of
the $595.10 charge relates to the supplemental document production
as opposed to the appendix.  Indeed, even for simpler entries such
as the $150.90 charge for September 2008 described above, the Court
cannot determine if Illinois Central produced 1,509 pages in
discovery to Guy and Brock (which would be necessary) or if it
produced 150 pages and made ten sets of those 150 pages (some of
which would likely be for the convenience of counsel).

In its response to Guy and Brock's Motion, Illinois Central
attempts to explain its $15,950.69 in copy charges by detailing,
for example, the number of pages it produced to Guy and Brock
during the litigation and the number of pages of exhibits it used
at trial.  But the detailed description that Illinois Central
provides in its opposition amounts to 37,212 pages, the total cost
of copying at $.10 per page would be $3,721.00. That is far short
of the $15,950.69 (or 159,506 pages) for which Illinois Central now

12

seeks to tax Guy and Brock.   It appears that Illinois Central is attempting to tax to Guy and Brock every single copy that its law firm made and then billed to Illinois Central. But that is not permitted under Fifth Circuit precedent.  A law firm undoubtedly makes multiple copies of documents for its own convenience that may be legitimately billed to the client but not taxed to the losing party as necessary costs of litigation.   The burden is on the prevailing party not only to demonstrate that it legitimately incurred copying costs but that the documents copied were necessarily obtained for use in the case.  Fogleman, 920 F.2d at 286.  Illinois Central has not met its burden in the chart attached to its bill of costs.  Illinois Central did, however, adequately support as necessary the 37,212 copies described in its opposition to Guy and Brock's Motion.  Accordingly, this Court awards Illinois Central $3,721.20 in copying costs.

**F.  Westlaw Charges and PACER Costs**

In its initial Bill of Costs [docket entry no. 268], Illinois Central seeks to recover $22,930.07 in Westlaw charges and $919.22 in PACER costs.   In its Supplement to Motion for Costs and Attorneys Fees [docket entry no. 307], Illinois Central seeks to tax as costs an additional $6,341.30 in computer research.  Guy and Brock contend that though this Court has awarded computer research costs in the past, e.g., Hines v. Plane Paint, Inc., 430 F.Supp.2d 598, 608 (S.D. Miss. 2005), it should not do so in this instance

because other district courts in the Fifth Circuit have thought better of doing so, e.g., Channell v. Eichelberger, 2008 WL 4683419 (N.D. Miss. Oct. 22, 2008).  In response, Illinois Central cites numerous examples of courts that have awarded computer research charges to the prevailing party.

Here, Illinois Central seeks to have its costs taxed to Guy and Brock pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920.  For this reason, few of the cases cited by either side is relevant because most either award charges for electronic research as costs under some other federal statute or award them as attorneys' fees.  For example, in Hines, this Court awarded computer research charges as costs under 28 U.S.C. § 1447(c) which provides for payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of removal after remand.  430 F.Supp.2d at 600, 608.  In Channel, the district court for the Northern District of Mississippi refused to award computer research charges as attorneys' fees (not costs) sought under 42 U.S.C. § 1988.  2008 WL 4683419 at *3.

Most courts have refused, however, to tax as costs charges for electronic research under Fed. R. Civ. P. 54(d)(1) because electronic research is not listed in 28 U.S.C. § 1920 and the Supreme Court held in Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987) that only items listed in § 1920 could be taxed as costs.  E.g., Attrezzi, LLC v. Maytag Corp., 436 F.3d 32,(1st

Cir. 2006); <u>U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.</u>, 95 F.3d 153 (2d Cir. 1996); <u>Sheffer v. Experian Information Solutions, Inc.</u>, 290 F. Supp. 2d 538 (E.D. Pa. 2003); <u>American Medical Sec., Inc. v. Larsen</u>, 31 F. Supp. 2d 502 (D. Md. 1998); <u>Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital</u>, Inc., 952 F. Supp. 415 (N.D. Tex. 1997).  Though the Fifth Circuit has not yet addressed this question, it recently held that a district court abused its discretion in awarding costs, including electronic research charges, not enumerated in § 1920 without citing the statutory basis for the award and remanded for the district court to do so. <u>Gagnon v. United Technisource, Inc.</u>, 707 F.3d 1036, 1045 (5th Cir. 2010).  Accordingly, this Court denies Illinois Central's request to tax as costs charges incurred for electronic research using Westlaw and PACER.[2]

## II. Attorneys' Fees

Through its initial and supplemental motions, Illinois Central seeks a total of $958,857.00 in attorneys' fees.  As will be explained in more detail below, this Court awards Illinois Central $547,500.00 in fees.

### A. Governing Law

Though the award of costs in a diversity action is a

_____

[2] Illinois Central initially sought to recover postage fees through its bill of costs but has since withdrawn that request. [Docket no. 300 at n.1.]

procedural issue such that federal law applies, the award of attorneys' fees is a substantive issue and the relevant state law applies. <u>Shelak v. White Motor Co.</u>, 636 F.2d 1069, 1027 (5th Cir. 1981). Accordingly, Mississippi law governs Illinois Central's motion for attorneys' fees. Under Mississippi law, attorneys' fees may be awarded only where the contract or statute provides for them or where the losing party's conduct was outrageous enough to award punitive damages. <u>Central Bank of Mississippi v. Butler</u>, 517 So.2d 507, 511 (Miss. 1987). Because the jury awarded punitive damages to Illinois Central (and this Court upheld that award in its Order on Guy and Brock's Motion for Judgment as a Matter of law), attorneys' fees may also be awarded. Rule 1.5(a) of the Mississippi Rules of Professional Conduct sets out the factors a trial court should consider in determining a reasonable amount of attorneys' fees. The Mississippi factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Further, in McKee v. McKee, 481 So.2d 764, 767 (Miss. 1982), the Mississippi Supreme Court stated that factors to be considered in an award of attorneys' fees included "the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charged in the community, and the preclusion of other employment by the attorney due to the acceptance of the case." The Mississippi Supreme Court has stated that "[t]he McKee factors are strikingly similar to those set out in Miss. R. Prof. Conduct 1.5(a)." Tupelo Revelopment Agency v. Gray Corp., Inc., 927 So.2d 495, 521 (Miss. 2007).

The McKee/Rule 1.5 Mississippi factors are also virtually identical to the factors initially endorsed by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and later adopted by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424 (1983), although the Mississippi factors do not include "the undesirability of the case" which is considered under Hensley. In other words, though Mississippi law governs the amount of the fee award here, because the factors considered under state and federal law are nearly identical, both state and federal

17

cases are instructive.  And under both sets of cases, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate."  Mauck v. Columbus Hotel Co., 741 So.2d 259, 271 (Miss. 1999) (citing Hensley, 461 U.S. at 433).  Taking the reasonable hours multiplied by a reasonable rate is known as the "lodestar" method.  Id. (citing Hensley, 461 U.S. at 433).

**B.  Guy and Brock's Objections**

Guy and Brock do not object to the rate charged by Illinois Central's attorneys which averaged in the range of $200 per hour. Guy and Brock admit that this case required skill by Illinois Central's attorneys; that those attorneys demonstrated a high degree of skill; and that there were apparently no time limitations in place by Illinois Central for its attorneys.  Guy and Brock's principal objection is that Illinois Central's nearly $1 million attorneys' fee request is unreasonable given that it sought only $210,000 in compensatory damages.  Guy and Brock further identify several categories of Illinois Central's attorneys' fees which they find objectionable: fees incurred before Guy and Brock were added as parties to the case; clerical and administrative charges; communications with co-counsel; duplication of effort/interoffice conferences; and time and labor not required.  Guy and Brock note, however, that their line-item objections are not all-inclusive but

18

are meant only to demonstrate the excess with which Illinois Central chose to litigate this case.

For its part, Illinois Central argues that fees incurred before Guy and Brock were made parties to the case in January 2008 should not be excluded because the claims against both Harried and Turner and Guy and Brock share a common core of facts and thus all fees incurred can be reasonably assessed against Guy and Brock. This Court agrees that attorneys' fees incurred before Guy and Brock were added as parties to this action are recoverable because the claims against Harried and Turner and Guy and Brock share a common core of facts. Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 327 (5th Cir. 1995). With respect to the paralegal fees, Illinois Central argues that such fees are generally recoverable and this Court agrees. Richardson v. Byrd, 709 F.2d 1016, 1023 (5th Cir. 1983). With respect to Guy and Brock's objections to communications with co-counsel, duplication of effort/interoffice conferences, and time and labor not required, Illinois Central responds to Guy and Brock's specific objections to certain daily billing entries with explanations of why such tasks were legitimate. With respect to Guy and Brock's principal argument that attorneys' fees of nearly $1 million are simply unreasonable in light of compensatory damages of $210,000, Illinois Central responds that there is no rule requiring attorneys' fees to be proportional to the amount of the judgment and that courts often do

19

award attorneys fees greater than the amount of the judgment.

**C. Analysis**

Illinois Central, as the party seeking recovery of attorneys'
fees bears the burden of establishing that its fees are reasonable.
Mississippi State Chapter Operation Push v. Mabus, 788 F.Supp. 1406
(N.D. Miss. 1992).  It is worth noting that Illinois Central's
support of its motion for attorneys' fees, though voluminous,
leaves much to be desired.  The only documentation that Illinois
Central submitted was the daily time entries of each attorney or
paralegal who recorded time on the Harried and Turner matters over
the course of the nearly four-year history of this litigation.
These daily time entries did not total the number of hours recorded
by attorney, by month or by year.  Given the length of the case
history here and the enormous fee award sought (again, nearly $1
million), Illinois Central's motion would have been much better
supported had it summarized its attorney hours expended in some
useful way.  It could have, for example, summarized the hours
worked and fees billed by category, breaking them down into amounts
billed for document production or deposition preparation or motions
practice.  At the very least, Illinois Central should have
presented its supporting documentation to the Court in a more
organized fashion, rather than expecting the Court to parse what
appear to be hundreds of pages of individual time entries (the
pages are not numbered).

To ascertain the total number of hours worked by Illinois Central's attorneys (as opposed to the total dollar amount billed) using what Illinois Central provided, this Court would have been forced to review the extensive billing records page-by-page and to add the individual billing entries line-by-line. Because doing so would be untenable, this Court ordered Illinois Central, and for comparison, Guy and Brock, to submit a chart detailing, by month, the number of hours billed by each attorney and paralegal for this case, his or her hourly rate, and the total dollar amount associated with those hours. The charts produced were illuminating. Illinois Central's $958,857.00 attorneys' fee request represents a combined 5,731.70 hours of attorney and paralegal time (with the attorneys billing at a rate of an average of $200 per hour and the paralegals at an average of $95 per hour). Guy and Brock's submitted chart indicates that their law firm devoted 2,532.05 hours of combined paralegal and attorney time to this case, totaling $713,549.75 in fees (its attorneys billed at a higher hourly rate). Using those charts and the relevant McKee/Johnson factors as a guide, this Court now determines the appropriate lodestar for this case.

i. *The Amount Involved and the Results Obtained*

The touchstone of any attorneys' fee award is reasonableness. E.g., Cruse v. Nunley, 699 So.2d 941, 948 (Miss. 1997) ("an award of attorney fees, if any, should be limited to the amount of fees

21

that is reasonable in relation to the results obtained")(citing Hensley, 461 U.S. at 440).   In light of the primacy of "reasonableness" in the attorneys' fee calculation and taking into account the amount involved and the results obtained (per McKee and Johnson), Illinois Central's 5,731 attorney hours and nearly $1 million in legal fees is extraordinarily high.   First, Illinois Central knew at the outset of this case that its maximum compensatory damages were $210,000.   As the Fifth Circuit held where a district court had awarded attorneys' fees that were eighty percent of the recovered amount, "the fee [requested] is more than the traffic should bear."   Meeks v. State Farm Mutual Auto. Ins. Co., 460 F.2d 776, 780 (5th Cir. 1972).   Though there is no requirement that an attorneys' fee award be proportional to the damages award, "the amount of damages awarded is one factor to be considered in setting the amount of attorney's fees."   Miller v. Western World Ins. Co., 818 F.2d 1227, 1235 (5th Cir. 1987).

Significantly, this case is distinguishable from those cited by Illinois Central as supporting a fee award equal to or higher than the damages recovered.   For example, in Wal-Mart Stores, Inc. v. Qore, Inc., 2010 WL 817295 (N.D. Miss. Mar. 4, 2010) the Northern District awarded $810,000 in attorneys fees where the jury had awarded the plaintiff a total judgment of $1,283,495.75.   But the plaintiff had originally sought $11.8 million dollars in damages and the Court noted that the case had a "potential for a

large award." Id. at *5.  See also Louisiana Power & Light Co. v.
Kellstrom, 50 F.3d 319, 337 (5th Cir. 1995) (modifying district
court's fee award and awarding $3.6 million in fees where plaintiff
had only recovered $500,000 but had sought $15-17 million in
complicated antitrust case).  Here, by contrast, Illinois Central
sought only $210,000 in compensatory damages plus additional
punitive damages.  Even given the very real possibility of
recovering punitive damages, attorneys' fees that are nearly five
times the maximum compensatory damages recoverable are not
reasonable.

    ii.  *Time and Labor Required, Difficulty of Issues, and
        Requisite Skill*

Moreover, examining the time and labor required, the novelty
and difficult of the questions involved, and the skill requisite to
perform the legal service properly further indicates that Illinois
Central's requested fees are excessive.  Illinois Central's claims
were for fraud and breach of the duty of good faith and fair
dealing and essentially alleged that Harried and Turner and Guy and
Brock lied about whether Harried and Turner had previously made
asbestos-related claims against Illinois Central.  Fraud and breach
of the duty of good faith and fair dealing are not inherently
complicated claims.  This case was tried in five days and the
parties took fourteen depositions, neither of which indicates an
extraordinarily complex subject-matter.  This Court recognizes that
this case was made somewhat more complicated by the fact that Guy

and Brock are attorneys and there were significant disputes amongst the parties during discovery about the attorney-client privilege. But that complicating factor did not transform this run-of-the-mill state law case into, for example, an antitrust case which requires specialized legal and technical knowledge and extensive discovery. Illinois Central argues that its claims were "novel" and a "case of first impression" because it is not aware of a case in which a former defendant sued two former plaintiffs and their attorneys for settlement fraud.  This Court is not persuaded that the specific identities of the plaintiffs and defendants renders this case one of first impression or more difficult than any other fraud case.

iii.  *Fee Customarily Charged in the Locality*

As noted, Guy and Brock do not object to the hourly rate charged by Illinois Central's attorneys which averaged $200 per hour.  "A reasonable hourly rate is based on the 'prevailing market rates in the community.'"   <u>Worldcom, Inc. v. Automated Communications, Inc.</u>, 75 F.Supp.2d 526, 531 (S.D. Miss. 1999), quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984).  In this case, the relevant legal market for this case is the Western Division of the Southern District of Mississippi.  <u>Tollett v. City of Kemah</u>, 285 F.3d 357, 368 (5th Cir. 2002)(explaining that "the 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits,'" quoting <u>Scham v. District Courts Trying Criminal Cases</u>, 148 F.3d

554, 558 (5th Cir. 1998)).   A reasonable hourly rate for a
particular community is generally established through affidavits of
other attorneys practicing there.  <u>Watkins v. Fordice</u>, 7 F.3d 453,
458 (5th Cir. 1993); <u>Tollett</u>, 285 F.3d at 368.   Illinois Central
has submitted affidavits supporting that $200 per hour is
reasonable in the community and this Court has found that exact
rate to be reasonable in at least one other case.  <u>L&A Contracting</u>
<u>v. Byrd Bros., Inc.</u>, 2010 WL 1223321 (S.D. Miss. Mar. 24, 2010).
Accordingly, the Court finds that $200 per hour is a reasonable
hourly rate for this case.

iv.  *Remaining <u>McKee/Johnson</u> factors*

With respect to the "experience, reputation, and ability of
the lawyer or lawyers performing the services" the Court recognizes
that Illinois Central's attorneys are well respected and showed
themselves to be very able throughout the course of this
litigation.  With respect to "the likelihood, if apparent to the
client that the acceptance of the particular employment will
preclude other employment by the lawyer," Illinois Central argues
simply that the case was very time-consuming and thus the attorneys
involved had little time to devote to other matters.   But, as
discussed above, this case was not inherently time-consuming.  None
of the remaining <u>McKey/Johnson</u> factors (relative financial
abilities of the parties; time limitations imposed by the client or
the circumstances; the nature and length of the professional

relationship with the client; and the fact that the fee is fixed rather than contingent) are illuminating under the factual circumstances of this case.

    v.  *Billing Judgment*

    In determining the number of hours reasonably expended on a case, the Court must take into account whether Illinois Central's attorneys exercised "billing judgment." <u>Walker v. HUD</u>, 99 F.3d 761, 769 (5th Cir. 1996). Billing judgment is usually shown by the attorney writing off unproductive, excessive, or redundant hours. <u>Id.</u> Keeping in mind that "a district court cannot inquire into the reasonableness of every action taken and every hour expended by counsel," <u>Riddell v. Nat'l Democratic Party</u>, 545 F.Supp. 252, 249 (S.D. Miss. 1982), this Court will not make a line-by-line determination of whether each of the thousands[3] of individual time entries submitted by Illinois Central is reasonable. But even a more general review reflects that its attorneys failed to exercise billing judgment. For example, there are numerous instances in which two Illinois Central attorneys billed time for reviewing the exact same document or attending the exact same deposition. While it may be useful for a second set of eyes to see every document or to have multiple attorneys at a deposition, it is redundant and therefore reflects a lack of billing judgment when presented in a

---

    [3] Again, this Court can only guess at the number of time entries because Illinois Central did not number the pages or time entries it submitted to the Court.

petition for attorneys' fees.   Moreover, there are numerous instances in which the time recorded to perform particular tasks seems excessive.   For example, one Illinois Central paralegal recorded one half hour for reviewing a docket sheet for the status of a motion and another full hour for again checking the status of that same motion.

  iv.   *Lodestar for This Case in Light of Relevant Factors*

  Being very familiar with the long history of this litigation, it is apparent to the Court that Illinois Central used this litigation as a vehicle to investigate other potential wrongdoing by Guy and Brock or their clients with respect to settled asbestos claims against Illinois Central.   And though the amount of money involved in Harried and Turner's two settlements was relatively small, Guy and Brock had represented numerous clients with asbestos claims and thus the greater financial stakes for both parties were quite high.   But Illinois Central never added claims addressing other clients of Guy and Brock; the claims at issue here related only to the Harried and Turner settlements which totaled $210,000. Of course, a litigant is free to spend as much money on lawyers as it desires or to use litigation as an investigative tool but it cannot then recover every dollar of fees incurred where an attorneys' fee award is limited to a reasonable number of hours times a reasonable hourly rate.

  After considering the relevant <u>McKee/Johnson</u> factors as well

27

as Illinois Central's lack of billing judgment, this Court determines that a reasonable number of attorney hours to have expended on this case is 2500 (Illinois Central seeks reimbursement for 4,251.4 attorney hours). For context, this Court has learned in other cases that a typical firm attorney bills approximately 2000 hours per year, assuming eight hours of time five days a week for 50 weeks per year. Restated in those terms, this Court's determination that 2500 attorney hours were reasonably devoted to this case equates to one and a quarter years of one attorney's time or slightly more than half of one year for two attorneys, with the work divided between them. At a lodestar rate of $200 per hour, the Court awards Illinois Central $500,000 in attorneys' fees.

Illinois Central also seeks reimbursement for 1480.3 paralegal hours billed at an average of $95 per hour. For the reasons already discussed, the Court finds this excessive in light of the circumstances of this case. A more reasonable figure is 500 paralegal hours. Guy and Brock do not object to a paralegal rate of $95 per hour. Accordingly, the Court awards Illinois Central $47,500 in paralegal fees.

## III. Post-Judgment Interest

Illinois Central seeks an award of post-judgment interest pursuant to 28 U.S.C. § 1961(a) which provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court ... [and shall be] calculated from the date of the

28

entry of judgment." In diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law." Boston Old Colony Ins. Co. v. Tiner Assocs., 288 F.3d 222, 234 (5th Cir. 2002). The post-judgment interest rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." Id. Here, the judgment was entered on March 24, 2010 and for the week ending March 19, 2010, that interest rate was .41 percent.

Guy and Brock do not object to Illinois Central's motion for post-judgment interest. Accordingly, this Court awards Illinois Central post-judgment interest at a rate of .41 percent to run from March 24, 2010 until the date on which Guy and Brock pay the judgment. Illinois Central seeks, in a footnote, to have the post-judgment interest begin to run from March 9, 2010 because that is the date that of the jury verdict and the date through which this Court awarded pre-judgment interest. Illinois Central cites no authority for this proposition and § 1961(a) clearly states that post-judgment interest runs from the date of entry of the judgment. This Court declines to deviate from the clear language of the statute.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Review of Bill of Costs [docket entry no. 285] is **GRANTED IN PART**.  The Court awards Illinois Central $20,661.48 in costs.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Attorneys' Fees, Costs, and Post-Judgment Interest [docket entry no. 259] and Supplemental Motion for Attorneys' Fees and Costs [docket entry no. 307] are **GRANTED IN PART**.  The Court awards Illinois Central $545,700.00 in fees.  The Court further awards Illinois Central post-judgment interest to accrue at .41 percent from March 24, 2010 until the date on which Guy and Brock pay the judgment.

**SO ORDERED** this the 25th day of January 2011.

  s/ David Bramlette
_____

**UNITED STATES DISTRICT COURT**
